# GRADY, DISTRICT ATTORNEY OF DUTCHESS COUNTY v. CORBIN

No. 89–474.   Argued March 21, 1990—Decided May 29, 1990

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MAR-SHALL, BLACKMUN, and STEVENS, JJ., joined.   O'CONNOR, J., filed a dissenting opinion, *post*, p. 524.   SCALIA, J., filed a dissenting opinion, in which REHNQUIST, C. J., and KENNEDY, J., joined, *post*, p. 526.

*Bridget R. Steller* argued the cause for petitioner.   With her on the briefs was *William V. Grady, pro se.*

*Richard T. Farrell* argued the cause for respondent. With him on the brief were *Stephen L. Greller* and *Ilene J. Miller.*

JUSTICE BRENNAN delivered the opinion of the Court.

We have long held, see *Blockburger* v. *United States*, 284 U. S. 299, 304 (1932), that the Double Jeopardy Clause of the Fifth Amendment[1] prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes whenever each statute does not "requir[e] proof of a fact which the other does not."   In *Illinois* v. *Vitale*, 447 U. S. 410 (1980), we suggested that even if two successive prosecutions were not barred by the *Blockburger* test, the second prosecution would be barred if the prosecution sought to establish an essential element of the second crime by proving the conduct for which the defendant was convicted in the first prosecution.   Today we adopt the suggestion set forth in *Vitale*.   We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.[2]

---

[1] The Double Jeopardy Clause states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."   It is enforceable against the States through the Fourteenth Amendment.   *Benton* v. *Maryland*, 395 U. S. 784, 794 (1969).

[2] This issue has been raised before us twice in recent years without resolution.   See *Fugate* v. *New Mexico*, 470 U. S. 904 (1985) (affirming by

## I

For purposes of this proceeding, we take the following facts as true. At approximately 6:35 p.m. on October 3, 1987, respondent Thomas Corbin drove his automobile across the double yellow line of Route 55 in LaGrange, New York, striking two oncoming vehicles. Assistant District Attorney (ADA) Thomas Dolan was called to the scene, where he learned that both Brenda Dirago, who had been driving the second vehicle to be struck, and her husband Daniel had been seriously injured. Later that evening, ADA Dolan was informed that Brenda Dirago had died from injuries sustained in the accident. That same evening, while at the hospital being treated for his own injuries, respondent was served with two uniform traffic tickets directing him to appear at the LaGrange Town Justice Court on October 29, 1987. One ticket charged him with the misdemeanor of driving while intoxicated in violation of N. Y. Veh. & Traf. Law § 1192(3) (McKinney 1986); the other charged him with failing to keep right of the median in violation of § 1120(a). A blood test taken at the hospital that evening indicated a blood alcohol level of 0.19%, nearly twice the level at which it is *per se* illegal to operate a motor vehicle in New York. § 1192(2).

Three days later, ADA Frank Chase began gathering evidence for a homicide prosecution in connection with the accident. "Despite his active involvement in building a homicide case against [Corbin], however, Chase did not attempt to ascertain the date [Corbin] was scheduled to appear in Town Justice Court on the traffic tickets, nor did he inform either the Town Justice Court or the Assistant District Attorney covering that court about his pending investigation." *In re Corbin* v. *Hillery,* 74 N. Y. 2d 279, 284, 543 N. E. 2d 714, 716 (1989). Thus, ADA Mark Glick never mentioned Brenda

---

an equally divided Court); *Thigpen* v. *Roberts,* 468 U. S. 27 (1984) (deciding on alternative grounds).

Dirago's death in the statement of readiness for trial and other pretrial pleadings he submitted to respondent and the LaGrange Town Justice Court on October 14, 1987. App. 5–10.

Accordingly, when respondent pleaded guilty to the two traffic tickets on October 27, 1987, a date on which no member of the District Attorney's office was present in court,[3] the presiding judge was unaware of the fatality stemming from the accident. Corbin was never asked if any others had been injured on the night in question and did not voluntarily incriminate himself by providing such information.[4] The

[3] The record does not indicate why the return dates for the traffic tickets were changed from October 29 to October 27. In any event, the District Attorney was not deprived of a meaningful opportunity to participate in this prosecution. If the District Attorney had wanted to prevent Corbin from pleading guilty to the traffic tickets so that the State could combine all charges into a single prosecution containing the later-charged felony counts, he could have availed himself of N. Y. Crim. Proc. Law § 170.20(2) (McKinney 1982), which states:

"At any time before entry of a plea of guilty to or commencement of a trial of an accusatory instrument [containing a charge of misdemeanor], the district attorney may apply for an adjournment of the proceedings in the local criminal court upon the ground that he intends to present the misdemeanor charge in question to a grand jury with a view to prosecuting it by indictment in a superior court. In such case, the local criminal court must adjourn the proceedings to a date which affords the district attorney reasonable opportunity to pursue such action, and may subsequently grant such further adjournments for that purpose as are reasonable under the circumstances."

Furthermore, the District Attorney's participation in this prosecution amounted to more than a failure to move for an adjournment. ADA Glick filed papers indicating a readiness to proceed to trial, and ADA Heidi Sauter appeared at Corbin's sentencing on behalf of the People of the State of New York.

[4] The New York Court of Appeals held that, although an attorney may not misrepresent facts, "a practitioner representing a client at a traffic violation prosecution should not be expected to *volunteer* information that is likely to be highly damaging to his client's position." *In re Corbin* v. *Hillery*, 74 N. Y. 2d 279, 288, and n. 6, 543 N. E. 2d 714, 718, and n. 6 (1989) (emphasis in original). Be-

presiding judge accepted his guilty plea, but because the District Attorney's office had not submitted a sentencing recommendation, the judge postponed sentencing until November 17, 1987, when an ADA was scheduled to be present in court. The ADA present at sentencing on that date, Heidi Sauter, was unaware that there had been a fatality, was unable to locate the case file, and had not spoken to ADA Glick about the case. Nevertheless, she did not seek an adjournment so that she could ascertain the facts necessary to make an informed sentencing recommendation. 74 N. Y. 2d, at 284, 543 N. E. 2d, at 716. Instead, she recommended a "minimum sentence,"[5] and the presiding judge sentenced Corbin to a $350 fine, a $10 surcharge, and a 6-month license revocation. App. 12.

Two months later, on January 19, 1988, a grand jury investigating the October 3, 1987, accident indicted Corbin, charging him with reckless manslaughter, second-degree vehicular manslaughter, and criminally negligent homicide for causing the death of Brenda Dirago; third-degree reckless assault for causing physical injury to Daniel Dirago; and driving while intoxicated. The prosecution filed a bill of particulars that

---

cause the Court of Appeals refused to characterize as misconduct the behavior of either Corbin or his attorney, we need not decide whether our double jeopardy analysis would be any different if affirmative misrepresentations of fact by a defendant or his counsel were to mislead a court into accepting a guilty plea it would not otherwise accept.

[5] The Town Justice Court notes of the sentencing proceeding state:

"Atty: My client is willing to plea [sic] guilty and I request minimum sentence.

"Judge: Read charges. We will accept your plea of guilty. Any recommendation on sentence?

"Atty: Minimum sentence." App. 12.

The State contends that these notes indicate that the sentencing recommendation was made by respondent's counsel, not by ADA Sauter. We do not so interpret the notes, but even if this were an accurate interpretation, the record nevertheless establishes that ADA Sauter was present at the sentencing proceeding yet neither objected to a minimum sentence nor mentioned that the accident had resulted in a fatality.

identified the three reckless or negligent acts on which it would rely to prove the homicide and assault charges: (1) operating a motor vehicle on a public highway in an intoxicated condition, (2) failing to keep right of the median, and (3) driving approximately 45 to 50 miles per hour in heavy rain, "which was a speed too fast for the weather and road conditions then pending." App. 20. Respondent moved to dismiss the indictment on statutory and constitutional double jeopardy grounds. After a hearing, the Dutchess County Court denied respondent's motion, ruling that the failure of Corbin or his counsel to inform the Town Justice Court at the time of the guilty plea that Corbin had been involved in a fatal accident constituted a "material misrepresentation of fact" that "was prejudicial to the administration of justice."[6] App. to Pet. for Cert. 8c.

Respondent then sought a writ of prohibition barring prosecution on all counts of the indictment. The Appellate Division denied the petition without opinion, but the New York Court of Appeals reversed. The court prohibited prosecution of the driving while intoxicated counts pursuant to New York's statutory double jeopardy provision, N. Y. Crim. Proc. Law § 40.20 (McKinney 1971 and Supp. 1970–1989). The court further ruled that prosecution of the two vehicular manslaughter counts would violate the Double Jeopardy Clause of the Fifth Amendment pursuant to the *Blockburger* test because, as a matter of state law, driving while intoxicated "is unquestionably a lesser included offense of second degree vehicular manslaughter." 74 N. Y. 2d, at 290, and n. 7, 543 N. E. 2d, at 720, and n. 7. Finally, relying on the "pointed dictum" in this Court's opinion in *Vitale*, the court barred prosecution of the remaining counts because the bill of particulars expressed an intention to "rely on the prior traffic

---

[6] The New York Court of Appeals found no misrepresentations and no misconduct during the guilty plea colloquy on October 27, 1987. 74 N. Y. 2d, at 287–288, and n. 6, 543 N. E. 2d, at 718–719, and n. 6. We accept its characterization of the proceedings. See n. 4, *supra*.

offenses as the acts necessary to prove the homicide and assault charges." 74 N. Y. 2d, at 289, 290, 543 N. E. 2d, at 719–720. Two judges dissented, arguing that respondent had deceived the Town Justice Court when pleading guilty to the traffic tickets. We granted certiorari, 493 U. S. 953 (1989), and now affirm.

## II

The facts and contentions raised here mirror almost exactly those raised in this Court 10 years ago in *Illinois* v. *Vitale*, 447 U. S. 410 (1980). Like Thomas Corbin, John Vitale allegedly caused a fatal car accident. A police officer at the scene issued Vitale a traffic citation charging him with failure to reduce speed to avoid an accident in violation of § 11–601(a) of the Illinois Vehicle Code. Vitale was convicted of that offense and sentenced to pay a $15 fine. The day after his conviction, the State charged Vitale with two counts of involuntary manslaughter based on his reckless driving. Vitale argued that this subsequent prosecution was barred by the Double Jeopardy Clause.

This Court held that the second prosecution was not barred under the traditional *Blockburger* test because each offense "require[d] proof of a fact which the other [did] not." See *Blockburger*, 284 U. S., at 304. Although involuntary manslaughter required proof of a death, failure to reduce speed did not. Likewise, failure to slow was not a statutory element of involuntary manslaughter. *Vitale, supra,* at 418–419. Thus, the subsequent prosecution survived the *Blockburger* test.

But the Court did not stop at that point. JUSTICE WHITE, writing for the Court, added that, even though the two prosecutions did not violate the *Blockburger* test:

> "[I]t may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that

is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* [v. *Ohio*, 432 U. S. 161 (1977),] and our later decision in *Harris* v. *Oklahoma*, 433 U. S. 682 (1977)." 447 U. S., at 420.

We believe that this analysis is correct and governs this case.[7] To determine whether a subsequent prosecution is barred by the Double Jeopardy Clause, a court must first apply the traditional *Blockburger* test. If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred. *Brown* v. *Ohio*, 432 U. S. 161, 166 (1977).

The State argues that this should be the last step in the inquiry and that the Double Jeopardy Clause permits successive prosecutions whenever the offenses charged satisfy the *Blockburger* test. We disagree. The Double Jeopardy Clause embodies three protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina* v. *Pearce*, 395 U. S. 711, 717 (1969) (footnotes omitted). The *Blockburger* test was developed "in the context of multiple punishments imposed in a single prosecution." *Garrett* v. *United States*, 471 U. S. 773, 778 (1985). In that context, "the Double Jeopardy Clause does no more than prevent the sentencing court

---

[7] We recognized in *Brown* v. *Ohio*, 432 U. S. 161, 169, and n. 7 (1977), that when application of our traditional double jeopardy analysis would bar a subsequent prosecution, "[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence. See *Diaz* v. *United States*, 223 U. S. 442, 448–449 (1912); *Ashe* v. *Swenson*, [397 U. S. 436, 453, n. 7 (1970)] (BRENNAN, J., concurring)." Because ADA Dolan was informed of Brenda Dirago's death on the night of the accident, such an exception is inapplicable here.

from prescribing greater punishment than the legislature intended." *Missouri* v. *Hunter*, 459 U. S. 359, 366 (1983). See also *Brown, supra,* at 165. The *Blockburger* test is simply a "rule of statutory construction," a guide to determining whether the legislature intended multiple punishments.[8] *Hunter, supra,* at 366.

---

[8] JUSTICE SCALIA's dissent contends that *Blockburger* is not just a guide to legislative intent, but rather an exclusive definition of the term "same offence" in the Double Jeopardy Clause. *Post,* at 528–530. To support this contention, JUSTICE SCALIA asserts that "[w]e have applied the [*Blockburger* test] in virtually every case defining the 'same offense' decided since *Blockburger.*" *Post,* at 535–536. Every one of the eight cases cited in support of that proposition, however, describes *Blockburger* as a test to determine the permissibility of cumulative punishments. None of the cases even suggests that *Blockburger* is the exclusive definition of "same offence" in the context of successive prosecutions. See *Jones* v. *Thomas,* 491 U. S. 376, 380–381 (1989) (case involved Double Jeopardy Clause's protection against multiple punishments, not successive prosecutions); *United States* v. *Woodward,* 469 U. S. 105, 108 (1985) *(per curiam)* (describing *Blockburger* as a "rule for determining whether Congress intended to permit cumulative punishment"); *Ohio* v. *Johnson,* 467 U. S. 493, 499, n. 8 (1984) (*Blockburger* test determines "whether cumulative punishments may be imposed"); *Albernaz* v. *United States,* 450 U. S. 333, 337 (1981) ("[T]his Court has looked to the *Blockburger* rule to determine whether Congress intended that two statutory offenses be punished cumulatively"); *Whalen* v. *United States,* 445 U. S. 684, 691 (1980) (*Blockburger* relied on "to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively"); *Simpson* v. *United States,* 435 U. S. 6, 11 (1978) (*Blockburger* established "the test for determining 'whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment' "), quoting *Brown* v. *Ohio, supra,* at 166; *Iannelli* v. *United States,* 420 U. S. 770, 785, n. 17 (1975) (*Blockburger* test used to identify "congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction"); *Gore* v. *United States,* 357 U. S. 386 (1958) (case involved imposition of multiple sentences in a single proceeding).

To further support its contention that *Blockburger* is the exclusive means of defining "same offence" within the meaning of the Double Jeopardy Clause, JUSTICE SCALIA's dissent relies on a lengthy historical discussion. *Post,* at 530–536. But this Court has not interpreted the Double Jeopardy Clause as JUSTICE SCALIA would interpret it since at least

Successive prosecutions, however, whether following acquittals or convictions,[9] raise concerns that extend beyond merely the possibility of an enhanced sentence:

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . ." *Green* v. *United States,* 355 U. S. 184, 187 (1957).

Multiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged. See, *e. g., Tibbs* v. *Florida,* 457 U. S. 31, 41 (1982) (noting that the Double Jeopardy Clause "prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction"); *Ashe* v. *Swenson,* 397 U. S. 436, 447 (1970) (the State conceded that, after the defendant was acquitted in one trial, the prosecutor did, at a subsequent trial, "what every good attorney would do—he refined his presentation in light of the turn of events at the first trial"); *Hoag* v. *New Jersey,* 356 U. S. 464 (1958) (after an alleged robber was acquitted, the State altered its presen-

---

1889. See *infra,* at 519 (discussing *In re Nielsen*). We have not previously found, and we do not today find, history to be dispositive of double jeopardy claims. Compare *post,* at 532–533 (SCALIA, J., dissenting) (relying on *Turner's Case,* Kelyng 30, 84 Eng. Rep. 1068 (K. B.), decided in England in 1708, which held that a defendant acquitted of stealing from a homeowner could lawfully be prosecuted for stealing from the homeowner's servant during the same breaking and entering), with *Ashe* v. *Swenson,* 397 U. S. 436 (1970) (holding that the Double Jeopardy Clause prevents a defendant acquitted of robbing one participant at a poker game from being prosecuted for robbing any of the other participants at the same game).

[9] See, *e. g., Ohio* v. *Johnson,* 467 U. S. 493, 498–499 (1984); *Ex parte Lange,* 18 Wall. 163, 169 (1874).

tation of proof in a subsequent, related trial–calling only the witness who had testified most favorably in the first trial–and obtained a conviction).    Even when a State can bring multiple charges against an individual under *Blockburger*, a tremendous additional burden is placed on that defendant if he must face each of the charges in a separate proceeding.

Because of these independent concerns, we have not relied exclusively on the *Blockburger* test to vindicate the Double Jeopardy Clause's protection against multiple prosecutions. As we stated in *Brown* v. *Ohio:*

> "The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense.    Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first."    432 U. S., at 166–167, n. 6.

Justice Powell, writing for the Court in *Brown*, provided two examples.    In *Ashe* v. *Swenson, supra,* the Court had held that the Double Jeopardy Clause barred a prosecution for robbing a participant in a poker game because the defendant's acquittal in a previous trial for robbing a different participant in the same poker game had conclusively established that he was not present at the robbery.    In *In re Nielsen*, 131 U. S. 176 (1889), the Court had held that a conviction for cohabiting with two wives over a 2½-year period barred a subsequent prosecution for adultery with one of the wives on the day following the end of that period.    Although application of the *Blockburger* test would have permitted the imposition of consecutive sentences in both cases, the Double Jeopardy Clause nonetheless barred these successive prosecutions.    ·*Brown, supra,* at 166–167, n. 6.

Furthermore, in the same Term we decided *Brown*, we reiterated in *Harris* v. *Oklahoma*, 433 U. S. 682 (1977), that a

strict application of the *Blockburger* test is not the exclusive means of determining whether a subsequent prosecution violates the Double Jeopardy Clause. In *Harris*, the defendant was first convicted of felony murder after his companion shot a grocery store clerk in the course of a robbery. The State then indicted and convicted him for robbery with a firearm. The two prosecutions were not for the "same offense" under *Blockburger* since, as a statutory matter, felony murder could be established by proof of any felony, not just robbery, and robbery with a firearm did not require proof of a death. Nevertheless, because the State admitted that "'it was necessary for all the ingredients of the underlying felony of Robbery with Firearms to be proved'" in the felony-murder trial, the Court unanimously held that the subsequent prosecution was barred by the Double Jeopardy Clause. *Harris, supra,* at 682–683, and n. (quoting Brief in Opposition 4). See also *Payne* v. *Virginia,* 468 U. S. 1062 (1984). As we later described our reasoning: "[W]e did not consider the crime generally described as felony murder as a separate offense distinct from its various elements. Rather, we treated a killing in the course of a robbery as itself a separate statutory offense, and the robbery as a species of lesser-included offense." *Vitale,* 447 U. S., at 420.

These cases all recognized that a technical comparison of the elements of the two offenses as required by *Blockburger* does not protect defendants sufficiently from the burdens of multiple trials. This case similarly demonstrates the limitations of the *Blockburger* analysis. If *Blockburger* constituted the entire double jeopardy inquiry in the context of successive prosecutions, the State could try Corbin in four consecutive trials: for failure to keep right of the median, for driving while intoxicated, for assault, and for homicide.[10] Tr. of Oral Arg. 17–18. The State could improve its presentation of proof with each trial, assessing which witnesses

[10] The State recognizes that under state law it would have to prosecute all of the homicide charges in the same proceeding. Tr. of Oral Arg. 17.

gave the most persuasive testimony, which documents had the greatest impact, and which opening and closing arguments most persuaded the jurors. Corbin would be forced either to contest each of these trials or to plead guilty to avoid the harassment and expense.

Thus, a subsequent prosecution must do more than merely survive the *Blockburger* test. As we suggested in *Vitale,* the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.[11] This is not an "actual evidence" or "same evidence" test.[12] The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct. As we have held, the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subse-

---

[11] Similarly, if in the course of securing a conviction for one offense the State necessarily has proved the conduct comprising all of the elements of another offense not yet prosecuted (a "component offense"), the Double Jeopardy Clause would bar subsequent prosecution of the component offense. See *Harris* v. *Oklahoma,* 433 U. S. 682 (1977) ("When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one") (footnote omitted); cf. *Brown,* 432 U. S., at 168 (noting that it is irrelevant for the purposes of the Double Jeopardy Clause whether the conviction of the greater offense precedes the conviction of the lesser offense or vice versa).

[12] Terminology in the double jeopardy area has been confused at best. Commentators and judges alike have referred to the *Blockburger* test as a "same evidence" test. See, *e. g.,* Note, The Double Jeopardy Clause as a Bar to Reintroducing Evidence, 89 Yale L. J. 962, 965 (1980); *Ashe,* 397 U. S., at 448 (BRENNAN, J., concurring). This is a misnomer. The *Blockburger* test has nothing to do with the *evidence* presented at trial. It is concerned solely with the statutory elements of the offenses charged. A true "same evidence" or "actual evidence" test would prevent the government from introducing in a subsequent prosecution any evidence that was introduced in a preceding prosecution. It is in this sense that we discuss, and do not adopt, a "same evidence" or "actual evidence" test.

quent proceeding. See *Dowling* v. *United States*, 493 U. S. 342 (1990). On the other hand, a State cannot avoid the dictates of the Double Jeopardy Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct. For example, if two bystanders had witnessed Corbin's accident, it would make no difference to our double jeopardy analysis if the State called one witness to testify in the first trial that Corbin's vehicle crossed the median (or if nobody testified in the first trial because Corbin, as he did, pleaded guilty) and called the other witness to testify to the same conduct in the second trial.

Applying this analysis to the facts of this case is straightforward. Respondent concedes that *Blockburger* does not bar prosecution of the reckless manslaughter, criminally negligent homicide, and third-degree reckless assault offenses.[13] Tr. of Oral Arg. 25–26. The rest of our inquiry in this case is simplified by the bill of particulars filed by the State on January 25, 1988.[14] That statement of the prosecution's theory of

---

[13] Because the State does not contest the New York Court of Appeals' ruling that the driving while intoxicated and vehicular manslaughter charges are barred under state law and *Blockburger*, respectively, Pet. for Cert. 12; Tr. of Oral Arg. 18, we need decide only whether the Double Jeopardy Clause prohibits the State from prosecuting Corbin on the homicide and assault charges.

[14] Application of the test we adopt today will not depend, as JUSTICE SCALIA's dissent argues, on whether the indictment "happens to show that the same evidence is at issue" or whether the jurisdiction "happen[s] to require the prosecution to submit a bill of particulars that cannot be exceeded." *Post*, at 529–530. The Courts of Appeals, which long ago recognized that the Double Jeopardy Clause requires more than a technical comparison of statutory elements when a defendant is confronting successive prosecutions, have adopted an essential procedural mechanism for assessing double jeopardy claims prior to a second trial. All nine Federal Circuits which have addressed the issue have held that "when a defendant puts double jeopardy in issue with a non-frivolous showing that an indictment charges him with an offense for which he was formerly placed in jeopardy, the burden shifts to the government to establish that there were in fact two separate offenses." *United States* v. *Ragins*, 840 F. 2d 1184, 1192 (CA4 1988) (collecting cases). This procedural mechanism will ensure that

proof is binding on the State until amended, 74 N. Y. 2d, at 290, 543 N. E. 2d, at 720, and the State has not amended it to date. Tr. of Oral Arg. 8. The bill of particulars states that the prosecution will prove the following:

> "[T]he defendant [(1)] operated a motor vehicle on a public highway in an intoxicated condition having more than .10 percent of alcohol content in his blood, [(2)] failed to keep right and in fact crossed nine feet over the median of the highway [,and (3) drove] at approximately forty-five to fifty miles an hour in heavy rain, which was a speed too fast for the weather and road conditions then pending . . . . By so operating his vehicle in the manner above described, the defendant was aware of and consciously disregarded a substantial and unjustifiable risk of the likelihood of the result which occurred. . . . By his failure to perceive this risk while operating a vehicle in a criminally negligent and reckless manner, he caused physical injury to Daniel Dirago and the death of his wife, Brenda Dirago." App. 20.

By its own pleadings, the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses. Therefore, the Double Jeopardy Clause bars this successive prosecution, and the New York Court of Appeals properly granted respondent's petition for a writ of prohibition. This holding would not bar a subsequent prosecution on the homicide and assault charges if the bill of particulars revealed that the State would not rely on proving the conduct for which Corbin had already been convicted (i. e., if the State relied solely on Corbin's driving too fast in heavy rain to establish recklessness or negligence).[15]

---

the test set forth today is in fact "implementable," *post*, at 529 (SCALIA, J., dissenting).

[15] Adoption of a "same transaction" test would bar the homicide and assault prosecutions even if the State were able to establish the essential ele-

## III

Drunken driving is a national tragedy. Prosecutors' offices are often overworked and may not always have the time to monitor seemingly minor cases as they wind through the judicial system. But these facts cannot excuse the need for scrupulous adherence to our constitutional principles. See *Santobello* v. *New York*, 404 U. S. 257, 260 (1971) ("This record represents another example of an unfortunate lapse in orderly prosecutorial procedures, in part, no doubt, because of the enormous increase in the workload of the often understaffed prosecutor's offices. The heavy workload may well explain these episodes, but it does not excuse them"). With adequate preparation and foresight, the State could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a single proceeding, thereby avoiding this double jeopardy question. We have concluded that the Double Jeopardy Clause of the Fifth Amendment demands application of the standard announced today, but we are confident that with proper planning and attention prosecutors will be able to meet this standard and bring to justice those who make our Nation's roads unsafe.

The judgment of the New York Court of Appeals is

*Affirmed.*

JUSTICE O'CONNOR, dissenting.

I agree with much of what JUSTICE SCALIA says in his dissenting opinion. I write separately, however, to note that my dissent is premised primarily on my view that the incon-

---

ments of those crimes without proving the conduct for which Corbin previously was convicted. The Court, however, has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause." *Garrett* v. *United States*, 471 U. S. 773, 790 (1985). But see *Jones* v. *Thomas*, 491 U. S. 376, 388–389 (1989) (BRENNAN, J., joined by MARSHALL, J., dissenting) (maintaining that "the Double Jeopardy Clause requires, except in very limited circumstances, that all charges against a defendant growing out of a single criminal transaction be tried in one proceeding").

sistency between the Court's opinion today and *Dowling* v. *United States*, 493 U. S. 342 (1990), decided earlier this Term, indicates that the Court has strayed from a proper interpretation of the scope of the Double Jeopardy Clause.

In *Dowling*, we considered whether an eyewitness' testimony regarding a robbery for which Dowling had been acquitted was admissible at a second trial of Dowling for an unrelated robbery. The eyewitness had testified at the first trial that a man had entered her house "wearing a knitted mask with cutout eyes and carrying a small handgun" and that his mask had come off during a struggle, revealing his identity. *Id.*, at 344. Based on this evidence, Dowling had been charged with burglary, attempted robbery, assault, and weapons offenses, but was acquitted of all charges. At a second trial for an unrelated bank robbery, the Government attempted to use the witness' testimony to prove Dowling's identity as a robber. We held that the Double Jeopardy Clause did not bar the introduction of the evidence: Because the prior acquittal did not necessarily represent a jury determination that Dowling was not the masked man who had entered the witness' home, the testimony was admissible in the second trial to prove identity. *Id.*, at 348–352.

The Court's ruling today effectively renders our holding in *Dowling* a nullity in many circumstances. If a situation identical to that in *Dowling* arose after today's decision, a conscientious judge attempting to apply the test enunciated by the Court, *ante*, at 510, 521, would probably conclude that the witness' testimony was barred by the Double Jeopardy Clause. The record in *Dowling* indicated that the Government was offering the eyewitness testimony to establish the defendant's identity, "an essential element of an offense charged in [the subsequent] prosecution," *ante*, at 521, and that the testimony would likely "prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Ibid.* See App. in *Dowling* v. *United States*, O. T. 1989, No. 88–6025, pp. 15–29. Under the Court's rea-

soning, the Government's attempt to introduce the eyewitness testimony would bar the second prosecution of Dowling for bank robbery. As a practical matter, this means that the same evidence ruled admissible in *Dowling* is barred by *Grady*.

The Court's decision is also inconsistent with *Dowling*'s approach to longstanding rules of evidence. Although we declined in *Dowling* to adopt a reading of the Double Jeopardy Clause that would "exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible" under Federal Rule of Evidence 404(b) and other Federal Rules of Evidence, 493 U. S., at 348, the wide sweep of the Court's decision today casts doubt on the continued vitality of Rule 404(b), which makes evidence of "other crimes" admissible for proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In my view, *Dowling* correctly delineated the scope of the Double Jeopardy Clause's protection. Accordingly, the inconsistency between our decision in *Dowling* and the Court's decision today leads me to reject the Court's expansive interpretation of the Clause. I respectfully dissent.

JUSTICE SCALIA, with whom CHIEF JUSTICE REHNQUIST and JUSTICE KENNEDY join, dissenting.

The State of New York seeks to prosecute respondent a second time for the actions that he took at 6:35 p.m. on October 3, 1987. If the Double Jeopardy Clause guaranteed the right not to be twice put in jeopardy for the same conduct, it would bar this second prosecution. But that Clause guarantees only the right not to be twice put in jeopardy for the same *offense*, and has been interpreted since its inception, as was its common-law antecedent, to permit a prosecution based upon the same acts but for a different crime. The Court today holds otherwise, departing from clear text and clear precedent with no justification except the citation of dictum in a recent case (dictum that was similarly unsupported, and inconclusive to boot). The effects of this innova-

tion upon our criminal justice system are likely to be substantial. In practice, it will require prosecutors to observe a rule we have explicitly rejected in principle: that all charges arising out of a single occurrence must be joined in a single indictment. Because respondent is not being prosecuted for the same offense for which he was previously prosecuted, I would reverse the judgment.

I

The Double Jeopardy Clause, made applicable to the States by the Fourteenth Amendment, *Benton* v. *Maryland*, 395 U. S. 784, 794 (1969), provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const., Amdt. 5. It "'protect[s] an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" *Burks* v. *United States*, 437 U. S. 1, 11 (1978), quoting *Green* v. *United States*, 355 U. S. 184, 187 (1957). In *Blockburger* v. *United States*, 284 U. S. 299, 304 (1932), we summarized the test for determining whether conduct violating two distinct statutory provisions constitutes the "same offence" for double jeopardy purposes:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres* v. *United States*, 220 U. S. 338, 342 [(1911)], and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey* v. *Commonwealth*, 108 Mass. 433 [(1871)]: 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defend-

ant from prosecution and punishment under the other.'" *Ibid.*

*Blockburger* furnishes, we have observed, the "established test" for determining whether successive prosecutions arising out of the same events are for the "same offence." *Brown* v. *Ohio*, 432 U. S. 161, 166 (1977). This test focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction. "If each [statute] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli* v. *United States*, 420 U. S. 770, 785, n. 17 (1975); see also *Gore* v. *United States*, 357 U. S. 386 (1958); *American Tobacco Co.* v. *United States*, 328 U. S. 781, 788–789 (1946).

We have departed from *Blockburger*'s exclusive focus on the statutory elements of crimes in only two situations. One occurs where a statutory offense expressly incorporates another statutory offense without specifying the latter's elements. For example, in *Harris* v. *Oklahoma*, 433 U. S. 682 (1977) *(per curiam)*, we held that a conviction for felony murder based on a killing in the course of an armed robbery barred subsequent prosecution for the underlying robbery. Although the second prosecution would not have been barred under the *Blockburger* test (because on its face the Oklahoma felony-murder statute did not require proof of robbery, but only of *some* felony), the second prosecution was impermissible because it would again force the defendant to defend against the charge of robbery. The other situation in which we have relaxed the *Blockburger* "elements" test occurs where a second prosecution would require relitigation of factual issues that were necessarily resolved in the defendant's favor in the first prosecution. See *Ashe* v. *Swenson*, 397 U. S. 436 (1970).

Subject to the *Harris* and *Ashe* exceptions, I would adhere to the *Blockburger* rule that successive prosecutions under

two different statutes do not constitute double jeopardy if each statutory crime contains an element that the other does not, regardless of the overlap between the proof required for each prosecution in the particular case. That rule best gives effect to the language of the Clause, which protects individuals from being twice put in jeopardy "for the same *offence*," not for the same *conduct* or *actions*. "Offence" was commonly understood in 1791 to mean "transgression," that is, "the Violation or Breaking of a Law." Dictionarium Britannicum (Bailey ed. 1730); see also J. Kersey, A New English Dictionary (1702); 2 T. Sheridan, A General Dictionary of the English Language (1780); J. Walker, A Critical Pronouncing Dictionary (1791); 2 N. Webster, An American Dictionary of the English Language (1828). If the same conduct violates two (or more) laws, then each offense may be separately prosecuted. Of course, this is not to say that two criminal provisions create "distinct" offenses simply by appearing under separate statutory headings; but if each contains an element the other does not, *i. e.*, if it is possible to violate each one without violating the other, then they cannot constitute the "*same* offence."

Another textual element also supports the *Blockburger* test. Since the Double Jeopardy Clause protects the defendant from being "twice put in jeopardy," *i. e.*, made to stand trial (see, *e. g.*, *Respublica* v. *Shaffer*, 1 Dall. 236, 237 (Pa. 1788)), for the "same offence," it presupposes that sameness can be determined before the second trial. Otherwise, the Clause would have prohibited a second "conviction" or "sentence" for the same offense. A court can always determine, before trial, whether the second prosecution involves the "same offence" in the *Blockburger* sense, since the Constitution entitles the defendant "to be informed of the nature and cause of the accusation." Amdt. 6. But since the Constitution does not entitle the defendant to be informed of the *evidence* against him, the Court's "proof-of-same-conduct" test will be implementable before trial only if the indictment hap-

pens to show that the same evidence is at issue, or only if the jurisdiction's rules of criminal procedure happen to require the prosecution to submit a bill of particulars that cannot be exceeded. More often than not, in other words, the Court's test will not succeed in preventing the defendant from being tried twice.

Relying on text alone, therefore, one would conclude that the Double Jeopardy Clause meant what *Blockburger* said. But there is in addition a wealth of historical evidence to the same effect. The Clause was based on the English common-law pleas of *auterfoits acquit* and *auterfoits convict*, which pleas were valid only "upon a prosecution for the same identical act *and* crime." 4 W. Blackstone, Commentaries 330 (1769) (emphasis added). In that respect they differed from the plea of *auterfoits attaint*, which could be invoked by any person under a sentence of death "whether it be for the same or any other felony." *Ibid.*

The English practice, as understood in 1791, did not recognize *auterfoits acquit* and *auterfoits convict* as good pleas against successive prosecutions for crimes whose elements were distinct, even though based on the same act. An acquittal or conviction for larceny, for example, did not bar a trial for trespass based on "the same taking, because Trespass and Larceny are Offences of a different Nature, and the Judgment for the one entirely differs from that for the other." 2 W. Hawkins, Pleas of the Crown, ch. 36, § 7, p. 376 (4th ed. 1762); see also *id.*, ch. 35, § 5, at 371. Sir Matthew Hale described the rule in similar terms:

> "If *A.* commit a burglary in the county of *B.* and likewise at the same time steal goods out of the house, if he be indicted of larciny for the goods and acquitted, yet he may be indicted for the burglary notwithstanding the acquittal.
>
> "And *è converso,* if indicted for the burglary and acquitted, yet he may be indicted of the larciny, for they are several offences, tho committed at the same time.

And burglary may be where there is no larciny, and larciny may be where there is no burglary.

"Thus it hath happened, that a man acquitted for stealing the horse, hath yet been arraigned and convict for stealing the saddle, tho both were done at the same time." 2 M. Hale, Pleas of the Crown, ch. 31, pp. 245–246 (1736 ed.).

Treatises of a slightly later vintage are in accord. Thomas Starkie (frequently cited in early American cases) says:

"The plea [of *auterfoits acquit*] will be vicious if the offences charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact.

.        .        .        .        .

"So if the defendant be first indicted upon the more general charge, consisting of the circumstances A. and B. only, an acquittal obviously includes an acquittal from a more special charge consisting of the circumstances A. B. and C. for if he be not guilty of the former, he cannot be guilty of those with the addition of a third. But if one charge consist of the circumstances A. B. C. and another of the circumstances A. D. E. then, if the circumstance which belongs to them in common does not of itself constitute a distinct substantive offence, an acquittal from the one charge cannot include an acquittal of the other." 1 T. Starkie, Criminal Pleading, ch. xix, pp. 322–323 (2d ed. 1822).

Likewise:

"The plea [of *auterfoits acquit*] cannot be sustained if the offences charged in the two indictments are in contemplation of law dissimilar from each other, however nearly analogous in fact and in circumstances . . . . [I]f the former charge were such a one as the defendant could not have been convicted of the latter upon it, the acquittal

cannot be pleaded." 2 C. Petersdorff, Abridgment 738, n. (1825).

See also 1 J. Chitty, Criminal Law 455–457 (1816).

The cases from this period are few, but they lend support to this view. In *Turner's Case*, Kelyng 30, 84 Eng. Rep. 1068 (K. B. 1708), the defendant was acquitted on an indictment charging burglary by breaking and entering the house of Tryon and taking away great sums of money. Turner was again indicted for burglary by breaking and entering the house of Tryon and removing the money of Tryon's servant. The court held that Turner could not "now be indicted again for the same burglary for breaking the house; but we all agreed, he might be indicted for felony, for stealing the money of [the servant]. For they are several felonies, and he was not indicted of this felony before . . . ." Even the holding of *Turner's Case*—that the second indictment charged the same felony of burglary—was limited in the famous case of *King* v. *Vandercomb*, 2 Leach 708, 168 Eng. Rep. 455 (K. B. 1796). There, the defendants were first charged with burglary by breaking and entering a house and stealing goods. The Crown abandoned the prosecution because it developed at trial that the defendants had not removed any property. In a second prosecution for burglary by breaking and entering with *intent* to steal, the plea of *auterfoits acquit* was held bad:

> "The circumstance of breaking and entering the house is common and essential to both the species of this offence; but it does not of itself constitute the crime in either of them; for it is necessary, to the completion of burglary, that there should not only be a breaking and entering, but the breaking and entering must be accompanied with a felony actually committed or intended to be committed; and these two offences are so distinct in their nature, that evidence of one of them will not support an indictment for the other." *Vandercomb, supra,* at 717, 168 Eng. Rep., at 460 (citations omitted).

The court's statement in *Vandercomb* that the "evidence of one of them will not support an indictment for the other," see also *id.*, at 720, 168 Eng. Rep., at 461, is the precise equivalent of our statement in *Blockburger* that "each provision requires proof of a fact which the other does not."   284 U. S., at 304.

The early American cases adhere to the same rule.   In *State* v. *Sonnerkalb*, 2 Nott & McCord 280 (S. C. 1820), the defendant was first convicted of retailing liquor without a license.   He was then tried a second time for "dealing, trading or trafficking with a negro," *id.*, at 281, based on the same sale, and "the same evidence was given on the part of the state," *id.*, at 280.   The court rejected the defendant's claim that he had been convicted twice for the same offense: "[L]et it be admitted, that the defendant committed physically but one act; two offences may be committed by one act . . . ." *Id.*, at 283.   Since the first offense required proof of retailing liquor (but it was "immaterial to whom he [did] retail," *id.*, at 282), and the second required proof of sale to a Negro (but it was immaterial what product he sold), the two offenses were different "in legal contemplation." *Ibid.*

*Commonwealth* v. *Roby*, 12 Pickering 496 (Mass. 1832), after analyzing *King* v. *Vandercomb* and Chitty's treatise, distilled the rule as follows:

> "In considering the identity of the offence, it must appear by the plea, that the offence charged in both cases was the same *in law* and *in fact*.   The plea will be vicious, if the offences charged in the two indictments be perfectly distinct in point of law, however nearly they may be connected in fact. . . . [I]t is sufficient if an acquittal from the offence charged in the first indictment virtually includes an acquittal from that set forth in the second, however they may differ in degree.   Thus an acquittal on an indictment for murder will be a good bar to an indictment for manslaughter, and *è converso*, an acquittal on an indictment for manslaughter will be a bar to

a prosecution for murder; for in the first instance, had the defendant been guilty, not of murder but of manslaughter, he would have been found guilty of the latter offence upon that indictment; and in the second instance, since the defendant is not guilty of manslaughter, he cannot be guilty of manslaughter under circumstances of aggravation which enlarge it into murder." *Id.*, at 504 (emphasis in original).

Unless one offense is lesser included of the other, the two are not the "same" under this test.

In *State* v. *Standifer*, 5 Porter 523 (Ala. 1837), the defendants were acquitted of murdering Levi Lowry. They were then charged with assault and battery of John Lowry, and pleaded *auterfoits acquit* on the grounds that the charge was based on the same affray as the previous prosecution. The court rejected the plea: "It is not of unfrequent occurrence, that the same individual, at the same time, and in the same transaction, commits two or more distinct crimes, and an acquittal of one, will not be a bar to punishment for the other." *Id.*, at 531. A jury could not lawfully have returned a verdict of guilty of assault on John Lowry at the first trial, and the offenses thus had "no appearance of identity." *Id.*, at 532.

In *State* v. *Sias*, 17 N. H. 558 (1845), the defendant was first acquitted of larceny, and then charged with obtaining property by conspiracy. The State admitted that the "facts alleged and proposed to be proved in this case are precisely the same facts, and same obtaining of the same property as the facts and taking of property which constituted the larceny in the former indictment." *Ibid.* The court held that the second prosecution was not barred:

"The offence charged in this indictment is not the same as that charged in the former, and of which the defendant has been acquitted; nor is it included in the former. The defendant could not have been convicted of a conspiracy on the former indictment. He cannot be con-

victed of larceny on this. The proof in the former case may have shown [the codefendant] to be guilty of larceny, and the defendant and others of a conspiracy, but the acquittal was of the larceny charged, and not of the conspiracy, which was not charged; and of which, for that reason, the defendant could neither have been acquitted nor convicted in that case." *Id.*, at 559.

See also *State* v. *Taylor*, 2 Bailey 49, 50 (S. C. 1830) (conviction of "trading with a slave" does not bar prosecution for receiving goods stolen by slave "founded on the same act"; "two distinct offences were committed" because neither offense was necessarily included within the other); *Hite* v. *State*, 17 Tenn. 357, 376 (1836) (following *Vandercomb*); *State* v. *Glasgow*, Dudley 40, 43 (S. C. 1837) (following *Sonnerkalb*); *State* v. *Coombs*, 32 Maine 529, 530 (1851) (conviction for selling liquor does not bar prosecution for being a common seller of such liquors: "In the trial for common selling, the single acts of sale are not prosecuted. They are shown merely as evidence of the larger crime. Such proceedings do not expose to a second punishment for the same offence"); *Wilson* v. *State*, 24 Conn. 57, 63 (1855) (conviction for larceny does not bar prosecution for burglary by breaking and entering with intent to steal because each offense requires proof of facts that other does not: "A uniform doctrine on this point has prevailed, wherever it has been discussed"); *State* v. *Warner*, 14 Ind. 572 (1860) (same rule).

Thus, the *Blockburger* definition of "same offence" was not invented in 1932, but reflected a venerable understanding. *Blockburger* relied on *Gavieres* v. *United States*, 220 U. S. 338, 343 (1911), which relied on *Burton* v. *United States*, 202 U. S. 344, 380–381 (1906), which relied on *Commonwealth* v. *Roby*, *supra*, one of the leading early cases. *Blockburger* and *Gavieres* also cited *Morey* v. *Commonwealth*, 108 Mass. 433, 435 (1871), which also applied *Roby*. We have applied the *Roby-Morey-Gavieres-Blockburger* formulation in virtually every case defining the "same offense" decided since

*Blockburger.* See, *e. g., Jones* v. *Thomas,* 491 U. S. 376, 384–385, n. 3 (1989); *United States* v. *Woodward,* 469 U. S. 105, 108 (1985) *(per curiam); Ohio* v. *Johnson,* 467 U. S. 493, 499, n. 8 (1984); *Albernaz* v. *United States,* 450 U. S. 333, 337 (1981); *Whalen* v. *United States,* 445 U. S. 684, 691 (1980); *Simpson* v. *United States,* 435 U. S. 6, 11 (1978); *Iannelli* v. *United States,* 420 U. S., at 785, n. 17; *Gore* v. *United States,* 357 U. S., at 392.

## II

The Court today abandons text and longstanding precedent to adopt the theory that double jeopardy bars "any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, *will prove* conduct that constitutes an offense for which the defendant has already been prosecuted." *Ante,* at 521 (emphasis added). The Court purports to derive that standard from our decision in *Illinois* v. *Vitale,* 447 U. S. 410 (1980), in which a motorist who caused a fatal accident was first convicted of unlawful failure to reduce speed, and later charged with involuntary manslaughter. We reversed the lower court's determination that the second prosecution was barred by the *Blockburger* test, because each statute had a statutory element that the other did not: Manslaughter, but not failure to reduce speed, required proof of death; failure to reduce speed, but not manslaughter, required a failure to slow down. In remanding, however, we noted the possibility that the second prosecution might be barred on another ground:

"[I]t may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, *his claim of double jeopardy*

*would be substantial* under *Brown* [v. *Ohio*, 432 U. S. 161 (1977),] and our later decision in *Harris* v. *Oklahoma*, 433 U. S. 682 (1977)." 447 U. S., at 420 (emphasis added).

We did not decide in *Vitale* that the second prosecution would constitute double jeopardy if it required proof of the conduct for which Vitale had already been convicted. We could not possibly have decided that, since the issue was not presented on the facts before us. But beyond that, we did not even *say* in *Vitale,* by way of dictum, that such a prosecution would violate the Double Jeopardy Clause. We said only that a claim to that effect would be "substantial," *ibid.;* see also *id.* at 421, deferring to another day the question whether it would be *successful.* That day is today, and we should answer the question no.

To begin with, the argument that *Vitale* said to be "substantial" finds no support whatever in the two cases that *Vitale* thought gave it substance, *Brown* v. *Ohio,* 432 U. S. 161 (1977), and *Harris* v. *Oklahoma,* 433 U. S. 682 (1977). The first, *Brown,* involved nothing more than a straightforward application of *Blockburger.* There a car thief was first convicted of "joyriding," an offense that consisted of "tak[ing], operat[ing], or keep[ing] any motor vehicle without the consent of its owner." 432 U. S., at 162, n. 1. He was then charged with auto theft, which required all the elements of joyriding plus an intent permanently to deprive the owner of his car. We held that *Blockburger* barred the second prosecution: Because joyriding was simply a lesser included offense of auto theft, proof of the latter would "invariably" require proof of the former. 432 U. S., at 168. We did not even hint that double jeopardy would also have barred the prosecution if the two statutes had *passed* the *Blockburger* test but the second prosecution could not be successful without proving the same facts. The second case, our brief *per curiam* disposition in *Harris,* involved a prosecution for armed robbery that followed a conviction for felony murder

based on the same armed robbery. The felony murder statute by definition incorporated all of the elements of the underlying felony charged; thus the later prosecution (rather than, as in *Brown*, the earlier conviction) involved a lesser included offense. "When," we said, "conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one." 433 U. S., at 682. Again, we gave no indication that the second prosecution would have been barred if—not because of the statutory definition of the crimes but merely because of the circumstances of the particular case—guilt could not be established without proving the same conduct charged in the first prosecution. In short, to call the latter proposition "substantial" in *Vitale* took more than a little stretching of the cited cases.

I would have thought the result the Court reaches today foreclosed by our decision just a few months ago in *Dowling* v. *United States*, 493 U. S. 342 (1990). There the State, in a prosecution for robbery, introduced evidence of the defendant's perpetration of another robbery committed in similar fashion (both involved ski masks), of which he had previously been acquitted. Proof of the prior robbery tended to establish commission of the later one. The State, in other words, "to establish an essential element of an offense charged in [the second] prosecution, [had] prove[d] conduct that constitute[d] an offense for which the defendant ha[d] already been prosecuted." *Ante*, at 521. We held, however, that the Double Jeopardy Clause was not violated. The difference in our holding today cannot rationally be explained by the fact that in *Dowling*, unlike the present case, the two crimes were part of separate transactions; that in no way alters the central vice (according to today's holding) that the defendant was forced a second time to defend against proof that he had committed a robbery for which he had already been prosecuted. In *Dowling*, as here, conduct establishing a previ-

ously prosecuted offense was relied upon, not because that offense was a statutory element of the second offense, but only because the conduct would *prove the existence* of a statutory element. If that did not offend the Double Jeopardy Clause in *Dowling*, it should not do so here.

The principle the Court adopts today is not only radically out of line with our double jeopardy jurisprudence; its practical effect, whenever it applies, will come down to a requirement that where the charges arise from a "'single criminal act, occurrence, episode, or transaction,'" they "must be tried in a single proceeding," *Brown* v. *Ohio, supra*, at 170 (BRENNAN, J., concurring)—a requirement we have hitherto "steadfastly refused" to impose, *Garrett* v. *United States*, 471 U. S. 773, 790 (1985). Suppose, for example, that the State prosecutes a group of individuals for a substantive offense, and then prosecutes them for conspiracy. Cf. *Pinkerton* v. *United States*, 328 U. S. 640, 645–646 (1946). In the conspiracy trial it *will prove* (if it can) that the defendants actually committed the substantive offense—even though there is evidence of other overt acts sufficient to sustain the conspiracy charge. For proof of the substantive offense, though not an *element* of the conspiracy charge, will assuredly be *persuasive* in establishing that a conspiracy existed. Or suppose an initial prosecution for burglary and a subsequent prosecution for murder that occurred in the course of the same burglary. In the second trial the State *will prove* (if it can) that the defendant was engaged in a burglary—not because that is itself an element of the murder charge, but because by providing a motive for intentional killing it will be *persuasive* that murder occurred. Under the analysis embraced by the Court today, I take it that the second prosecution in each of these cases would be barred, because the State, "to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Ante*, at 521. Just as, in today's case, proof of

drunken driving or of crossing the median strip invalidates the second prosecution even though they are not elements of the homicide and assault offenses of which respondent is charged; so also, in the hypotheticals given, proof of the substantive offense will invalidate the conspiracy prosecution and proof of the burglary the murder prosecution.

The Court seeks to shrink the apparent application of its novel principle by saying that repetitive proof violates the Double Jeopardy Clause only if it is introduced "to establish an essential element of an offense charged in [the second] prosecution." That is a meaningless limitation, of course. *All* evidence pertaining to guilt seeks "to establish an essential element of [the] offense," and should be excluded if it does not have that tendency.

The other half of the Court's new test does seem to import some limitation, though I am not sure precisely what it means and cannot imagine what principle justifies it. I refer to the requirement that the evidence introduced in the second prosecution must "prove conduct that constitutes an offense for which the defendant has already been prosecuted." This means, presumably, that prosecutors who wish to use facts sufficient to prove one crime in order to establish guilt of another crime must bring both prosecutions simultaneously; but that those who wish to use only *some of* the facts establishing one crime—not enough facts to "prove conduct that constitutes an offense"—can bring successive prosecutions. But, one may reasonably ask, what justification is there *even in reason alone* (having abandoned text and precedent) for limiting the Court's new rule in this fashion? The Court defends the rule on the ground that a successive prosecution based on the same proof exposes the defendant to the burden and embarrassment of resisting proof of the same facts in multiple proceedings, and enables the State to "rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged." *Ante,* at 518. But that vice does not exist only when the sec-

ond prosecution seeks to prove *all* the facts necessary to support the first prosecution; it exists as well when the second prosecution seeks to prove some, rather than all of them— *i. e.*, whenever two prosecutions each require proof of facts (or even a single fact) common to both. If the Court were correct that the Double Jeopardy Clause protects individuals against the necessity of twice proving (or refuting) the same *evidence*, as opposed to the necessity of twice defending against the same *charge*, then the second prosecution should be equally bad whether it contains all or merely some of the proof necessary for the first.

Apart from the lack of rational basis for this latter limitation, I am greatly perplexed (as will be the unfortunate trial court judges who must apply today's rootless decision) as to what precisely it means. It is not at all apparent how a court is to go about deciding whether the evidence that has been introduced (or that will be introduced) at the second trial "proves conduct" that constitutes an offense for which the defendant has already been prosecuted. Is the judge in the second trial supposed to pretend that he is the judge in the first one, and to let the second trial proceed *only if* the evidence would not be enough to go to the jury on the earlier charge? Or (as the language of the Court's test more readily suggests) is the judge in the second trial supposed to decide on his own whether the evidence before him really "proves" the earlier charge (perhaps beyond a reasonable doubt)? Consider application of the Court's new rule in the unusually simple circumstances of the present case: Suppose that, in the trial upon remand, the prosecution's evidence shows, among other things, that when the vehicles came to rest after the collision they were located on what was, for the defendant's vehicle, the wrong side of the road. The prosecution also produces a witness who testifies that prior to the collision the defendant's vehicle was "weaving back and forth"— *without* saying, however, that it was weaving back and forth over the center line. Is this enough to meet today's require-

ment of "proving" the offense of operating a vehicle on the wrong side of the road? If not, suppose in addition that defense counsel asks the witness on cross-examination, "When you said the defendant's vehicle was 'weaving back and forth,' did you mean weaving back and forth across the center line?"—to which the witness replies "yes." Will this self-inflicted wound count for purposes of determining what the prosecution has "proved"? If so, can the prosecution then seek to impeach its own witness by showing that his recollection of the vehicle's crossing the center line was inaccurate? Or can it at least introduce another witness to establish that fact? There are many questions here, and the answers to all of them are ridiculous. Whatever line is selected as the criterion of "proving" the prior offense—enough evidence to go to the jury, more likely than not, or beyond a reasonable doubt—the prosecutor in the second trial will presumably seek to introduce as much evidence as he can without crossing that line; and the defense attorney will presumably seek to provoke the prosecutor into (or assist him in) proving the defendant guilty of the earlier crime. This delicious role reversal, discovered to have been mandated by the Double Jeopardy Clause lo these 200 years, makes for high comedy but inferior justice. Often, the performance will even have an encore. If the judge initially decides that the previously prosecuted offense "will not be proved" (whatever that means) he will have to decide at the conclusion of the trial whether it "has been proved" (whatever that means). Indeed, he may presumably be asked to make the latter determination periodically during the course of the trial, since the Double Jeopardy Clause assuredly entitles the defendant to have the proceedings terminated as soon as its violation is evident. Even if we had no constitutional text and no prior case law to rely upon, rejection of today's opinion is adequately supported by the modest desire to protect our criminal legal system from ridicule.

A limitation that is so unsupported in reason and so absurd in application is unlikely to survive. Today's decision to extend the Double Jeopardy Clause to prosecutions that *prove* a previously prosecuted offense will lead predictably to extending it to prosecutions that *involve the same facts as* a previously prosecuted offense. We will thus have fully embraced JUSTICE BRENNAN's "same transaction" theory, which has as little support in the text and history of the Double Jeopardy Clause, but at least has the merit of being rational and easy to apply. One can readily imagine the words of our first opinion effecting this extension: "When we said in *Grady* that the second prosecution is impermissible if it 'will prove conduct' that constitutes the prior offense, we did not mean that it will establish commission of that offense with the degree of completeness that would permit a jury to convict. It suffices if the evidence in the second prosecution 'proves' the previously prosecuted offense in the sense of tending to establish one or more of the elements of that offense." The Court that has done what it has today to 200 years of established double jeopardy jurisprudence should find this lesser transmogrification easy. It may, however, prove unnecessary, since prosecutors confronted with the inscrutability of today's opinion will be well advised to proceed on the assumption that the "same transaction" theory has already been adopted. It is hard to tell what else has.

## III

Since I do not agree with the Court's new theory of the Double Jeopardy Clause, the question in this case for me is whether the current prosecution will place respondent in jeopardy for the "same offenses" for which he has already been convicted. The elements of the traffic offenses to which he pleaded guilty were, respectively, operating a vehicle on the wrong side of the road, N. Y. Veh. & Traf. Law § 1120(a) (McKinney 1986), and operating a vehicle while in an intoxicated condition, § 1192(3). The elements of the of-

fenses covered by the subsequent charges whose dismissal is challenged here * are, respectively, recklessly causing the death of another person, N. Y. Penal Law § 125.15 (McKinney 1987), negligently causing the death of another person, § 125.10, and recklessly causing physical injury to another person, § 120.00. Because respondent concedes, see *ante*, at 522, that each of these provisions contains an element, in the sense described by *Blockburger*, that the provisions under which he has been convicted do not, they do not constitute the "same offense" within the meaning of the Double Jeopardy Clause. I would therefore reverse the judgment.

---

* The court below held two vehicular manslaughter counts barred under the *Blockburger* test, and because the State does not contest that ruling here, see *ante*, at 521, n. 12, I do not reach it.