Terry D. McINTYRE, Appellant,

v.

Myrna TRICKEY, Appellee.

No. 89–2700.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1991.

Decided July 15, 1991.

Rehearing and Rehearing En Banc
Denied Aug. 30, 1991.

John L. Davidson, St. Louis, Mo., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before McMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Terry B. McIntyre appeals from the district court's denial of his petition for writ of habeas corpus based on a claim of double jeopardy. McIntyre argues that the government, to establish essential elements in his prosecution for stealing, proved conduct that constituted an offense, first degree tampering, for which he had earlier been convicted, thus violating the double jeopardy rule announced in *Grady v. Corbin*, — U.S. —, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). The State argues that: 1) McIntyre is procedurally barred from asserting his double jeopardy claim; and that 2) McIntyre cannot assert a *Grady* claim, as *Grady* announced a "new rule" that is not retroactively available to federal habeas petitioners. Moreover, the State argues that even if *Grady* applies, McIntyre cannot prevail under the rule of that case. The magistrate, whose report and recommendation the district court adopted, did not analyze McIntyre's double jeopardy claim under *Grady*, as *Grady* had not yet been decided. We reverse the district court's order.

In June 1986, a jury in the circuit court of the City of St. Louis found McIntyre guilty of first degree tampering under Mo. Rev.Stat. § 569.080 (1986), based on his operation on November 24, 1985, of an automobile knowing that he lacked the owner's consent. The Missouri Court of Appeals affirmed the conviction. *State v. McIntyre*, 735 S.W.2d 111 (Mo.Ct.App. 1987).

In February 1987, a jury in the circuit court in the County of St. Louis found McIntyre guilty of felony stealing under Mo.Rev.Stat. § 570.030 (1986), based on his stealing of that same automobile from a car dealership on November 22, 1985. The Missouri Court of Appeals, rejecting McIntyre's double jeopardy claim, affirmed the conviction. *State v. McIntyre*, 749 S.W.2d 420 (Mo.Ct.App.1988). On each conviction, McIntyre was sentenced as a persistent offender to ten years imprisonment, with the second sentence to run consecutively to the first.

The evidence presented at both trials established that on November 22, 1985, a man who identified himself only as "Johnny" entered the Mitsubishi dealership in Kirkwood, Missouri, and told salesman Steven George that he wanted to test drive a Mitsubishi Galant. While George was getting the keys to a Galant demonstrator, "Johnny" remained in the showroom where he was looking at the interior of another Galant. The showroom car had keys in its ignition, and those keys were similar to the keys of the demonstrator Galant. After "Johnny" took a test drive with George, he gave a set of Galant keys to George, who returned them to the dealership's "key board." About 15 minutes after "Johnny" left the dealership, George and another salesman discovered that the demonstrator Galant was missing and that the keys which George had placed on the board were from the showroom Galant at which "Johnny" had been looking. "Johnny" was the only person who had taken a ride with George in the demonstrator Galant on that day.

On November 24, 1985, two Kirkwood police officers spotted McIntyre driving the demonstrator Galant, which had been listed on a "hot sheet" of stolen cars. After a pursuit, the officers stopped the car and arrested McIntyre, who was driving, and a passenger. When the car was stopped, the missing Galant keys were in the ignition.

In a photographic line-up on November 27, George identified McIntyre as "Johnny." George testified at both of McIntyre's trials, as did Jake Naughton, general manager of the Mitsubishi dealership. Officer Kenneth Hornak, one of the two arresting officers, testified at the tampering trial, while the other officer, Lawrence O'Toole, testified at both trials.

McIntyre first raised his double jeopardy claim prior to his trial on the stealing charge, and he unsuccessfully reasserted this claim on appeal. *McIntyre*, 749 S.W.2d at 422.

Nothing appears in the record regarding McIntyre's post-conviction proceedings in Missouri state courts. The State admitted in its response to McIntyre's federal habe-

as petition that McIntyre had exhausted all state remedies on his double jeopardy claim and was not procedurally barred. *See* Response to Order to Show Cause at 3. In a November 1988 report and recommendation, the magistrate stated that the State had conceded exhaustion. *McIntyre v. Trickey,* No. 88–1708C(2), slip op. at 2 (magistrate's report) (E.D.Mo. Nov. 2, 1988).

McIntyre has restricted his federal habeas litigation to his double jeopardy claim. In his original federal petition, filed pro se, McIntyre did not cite *Grady* (as that case had not yet been decided), but he did clearly and thoroughly assert a double jeopardy claim.

In his November 1988 report, the magistrate recommended denying McIntyre's petition because under Missouri law, tampering is not a lesser included offense of stealing the same vehicle. Slip op. at 3–4 (magistrate's report) (November 2, 1988). The district court adopted the magistrate's report and recommendation. *McIntyre v. Trickey,* No. 88–1708C(2), slip op. at 1 (E.D.Mo. Nov. 22, 1988). After McIntyre refined and reasserted his claim in a motion to alter or amend judgment, the magistrate issued a second report, again recommending denial of McIntyre's petition. The magistrate reconsidered McIntyre's claim under the "same evidence test"[1] and concluded that despite the use of the same evidence at both trials, the evidence submitted at the tampering trial was not legally sufficient to convict McIntyre of stealing. *McIntyre v. Trickey,* No. 88–1708C(2), slip op. at 12 (magistrate's report) (E.D.Mo. Aug. 8, 1989). The district court adopted the magistrate's second report and recommendation. *McIntyre v. Trickey,* No. 88–1708C(2), slip op. at 1 (E.D.Mo. Sept. 18, 1989).

Through appointed counsel, McIntyre now presents his double jeopardy claim to this court.

### I.

While McIntyre contends that he is entitled to relief under *Grady,* the State asserts that we must not reach the merits of the *Grady* claim because: 1) McIntyre asserted a new type of double jeopardy claim in his motion to alter or amend before the district court that was not presented in his original federal habeas petition; 2) the rule of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), bars the application of *Grady* because McIntyre's conviction was final before *Grady* was announced.

The State's first argument can be summarized as follows: In his original habeas petition, McIntyre argued that his double jeopardy claim should be analyzed under the "same offense" test applied in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Because McIntyre in his motion to alter or amend urged the court to instead apply the "same evidence" test, he presented a claim different from the one he originally asserted. The State contends that McIntyre's failure to assert the "same evidence" test in his initial federal habeas petition constituted "abuse of the writ" under 28 U.S.C. § 2254, Rule 9(b) (1988), and also resulted in procedural default because McIntyre failed to exhaust the "same evidence" theory in the state courts.

The magistrate's second report, which the district court also adopted, rejected the State's arguments regarding abuse of the writ and procedural default. The magistrate concluded that the court should address the merits of McIntyre's claim because his motion did not present a new claim, but merely "clarif[ied]" the existing one. Slip op. at 4 (magistrate's report) (Aug. 8, 1989).

The State's argument rests solely on its contention that McIntyre raised a new theory in his motion to alter or amend judg-

---

**1.** Prior to *Grady,* several circuits had developed a "same evidence" test that looked at whether "the evidence required to support conviction in one of the prosecutions is sufficient to support conviction in the other prosecution." *United*

States v. Tercero,* 580 F.2d 312, 314 (8th Cir. 1978); *see also Grady,* 110 S.Ct. at 2094 n. 14; *United States v. Ragins,* 840 F.2d 1184, 1188 (4th Cir.1988).

ment that he had not presented in his original federal habeas petition. In its response to McIntyre's original federal petition, the State had conceded that McIntyre had exhausted his double jeopardy claim before the state courts and was not procedurally barred from raising the claim presented in that initial petition.

An examination of the pleadings that McIntyre submitted in connection with his initial petition and with his motion to alter or amend judgment establishes that, contrary to the State's argument, the substance of his claim remained essentially the same. In both the original petition and the motion to alter or amend, McIntyre argued that the government used the same evidence to convict him at both trials, thus violating the Fifth Amendment's double jeopardy clause. Although McIntyre conceded in his motion to alter or amend that *Brown v. Ohio,* which he had relied on in his original petition, was not persuasive authority for his argument, he otherwise relied on the same authority and asserted the same basic argument.

As McIntyre presented essentially the same claim in his motion to alter or amend judgment as he presented in the original habeas petition, we conclude that the State's arguments regarding abuse of the writ and procedural bar are without merit.[2] We therefore affirm the district court's order adopting the magistrate's report and recommendation on this issue.

## II.

■ The State next argues that *Teague v. Lane,* which held that federal habeas petitioners may not attack their conviction by relying on a rule of law established after their conviction became final, 489 U.S. at 310, 109 S.Ct. at 1074, prevents McIntyre from relying on *Grady.*[3] McIntyre counters that *Grady* did not announce

a "new rule" under *Teague,* but merely built upon the Court's previous double jeopardy decisions, including *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

Under *Teague,* "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070 (emphasis in original). *See also Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990) (test is whether a state court considering petitioner's claim at the time the conviction became final "would have felt compelled by existing precedent to conclude that the rule [petitioner sought] was required by the Constitution").

*Grady* held that "a subsequent prosecution must do more than merely survive the *Blockburger* test." 110 S.Ct. at 2093. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (double jeopardy clause is not violated if each statute requires proof of a fact which the other does not). Even if the *Blockburger* "same offense" test is satisfied, the double jeopardy clause still bars the "subsequent prosecution [if] the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady,* 110 S.Ct. at 2093.

An examination of *Grady* establishes that this rule was not dictated by precedent existing at the time McIntyre's conviction became final, and thus, was a new rule. In fact, the *Grady* Court explicitly stated that it was "adopt[ing] the *suggestion* set forth in *Vitale.*" 110 S.Ct. at 2087 (emphasis added). *See also id.* at 2093 ("As we *suggested* in *Vitale.* ...") (emphasis added).

---

**2.** The State cites two cases, *Buckley v. Lockhart,* 892 F.2d 715, 719 (8th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990), and *Gilmore v. Armontrout,* 861 F.2d 1061, 1064–65 (8th Cir.1988), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989), to support its argument that McIntyre is procedurally barred on his same evidence theo-

ry. These cases are clearly distinguishable from the one before us, as the essence of McIntyre's claim remained the same.

**3.** Direct review of McIntyre's second conviction was complete in May 1988. The Supreme Court announced *Grady* in May 1990.

Justice Scalia's dissenting opinion in *Grady,* joined by Justices Rehnquist and Kennedy, leaves no doubt that the dissent also regarded the *Grady* test as a new rule. The dissent attacked the majority for "departing from clear text and clear precedent with no justification except the citation of dictum in a recent case (dictum that was similarly unsupported and inconclusive to boot)." 110 S.Ct. at 2096 (Scalia, J., dissenting).

An examination of *Vitale,* relied on by the *Grady* majority, confirms that *Grady* indeed announced a new rule. While *Vitale* merely urged an expanded approach to double jeopardy analysis, *see Vitale,* 447 U.S. at 420, 100 S.Ct. at 2267, *Grady* explicitly prescribed a new test to be applied in cases involving subsequent prosecutions that do not violate the *Blockburger* rule. As the *Grady* rule was not "dictated" by precedent, we conclude that it is therefore a "new rule" under *Teague.*

■ Our analysis of the *Teague* issue does not, however, end with our conclusion that *Grady* announced a new rule. Despite the general bar on retroactive application of new rules for cases on collateral review, new rules under *Teague* are fully retroactive if they fit into one of two exceptions. *Teague,* 489 U.S. at 311, 109 S.Ct. at 1075.

*Teague* stated that a habeas petitioner may rely on a new rule: 1) "if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' "; or 2) "if it requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty." ' " *Id.* As a double jeopardy rule does not concern the fairness of the procedures used to convict, the second exception is not applicable here.

The first exception, narrowly defined in *Teague,* was expanded in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), a case addressing the constitutionality of imposing the death penalty on mentally retarded defendants. Although *Teague* described the first exception as "focusing solely on new rules according constitutional protection to an actor's primary conduct," *id.* at 329, 109 S.Ct.

at 2952, *Penry* suggested that the first exception also encompasses "substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed." *Id.* Deciding that a new rule prohibiting the execution of mentally retarded defendants would fit within the first *Teague* exception, the Court explained:

"[A] new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all. In both cases, the Constitution itself deprives the State of the power to impose a certain penalty, and the finality and comity concerns underlying Justice Harlan's view of retroactivity [expressed in *Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) ] have little force."

492 U.S. at 330, 109 S.Ct. at 2952–53. The *Penry* Court added: " 'There is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose.' " *Id.* (citing *Mackey,* 401 U.S. at 693, 91 S.Ct. at 1180 (Harlan, J., concurring in part and dissenting in part)). Thus, the first *Teague* exception "cover[s] not only rules forbidding criminal punishment of certain kinds of primary conduct, but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." 492 U.S. at 330, 109 S.Ct. at 2953.

In *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), and *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), the Court described the first *Teague* exception as encompassing " 'categorical guarantees accorded by the Constitution' *such as* a prohibition on the imposition of a particular punishment on a certain class of offenders.' " *Butler,* 110 S.Ct. at 1218 (emphasis added). *See also Saffle,* 110 S.Ct. at 1263 (same). Thus, the Court cited the rule discussed in *Penry* as an illustrative example of a categorical constitutional guarantee, but did not use that rule to limit the scope of the exception.

The Fifth Amendment states that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb...." In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Court labeled the double jeopardy clause a "basic constitutional guarantee," *id.* at 718, 89 S.Ct. at 2077, and quoted an 1873 case that stated: " 'If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And ... there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court on the same facts, for the same statutory offense.' " *Id.* at 717–718, 89 S.Ct. at 2076–77 (quoting *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 168, 21 L.Ed. 872 (1873)).

The protection afforded by the double jeopardy clause operates at an elemental level. The purpose of the clause is not to ensure the fairness of the trial, but to prevent the trial from taking place at all. *See Robinson v. Neil*, 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973). Because it bars an unconstitutional prosecution, a rule concerning double jeopardy is analogous to the rule discussed in *Penry*, which would have barred the imposition of an unconstitutional punishment. *See Penry*, 492 U.S. at 329–30, 109 S.Ct. at 2952–53. It thus follows that the prohibition on double jeopardy is a "categorical guarantee[ ] accorded by the Constitution." *See Butler*, 110 S.Ct. at 1218. We therefore conclude that a rule concerning double jeopardy, such as the *Grady* rule, falls under the first *Teague* exception and must be accorded full retroactive effect.

Our conclusion finds further support in the pre-*Teague* opinion of *Robinson v. Neil*, in which the Court accorded full retroactive effect to the double jeopardy rule it had earlier announced in *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). In *Robinson*, the Court refused to apply the prevailing standard, as prescribed in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), for determining the retroactivity of

constitutional rules. It stated that a rule concerning double jeopardy did not "readily lend[ ] itself" to a *Linkletter* analysis. *Robinson*, 409 U.S. at 507, 93 S.Ct. at 877. The Court reasoned that while the double jeopardy guarantee, like other constitutional guarantees, is a right of the criminal defendant, "its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." *Id.* at 509, 93 S.Ct. at 878.

Although *Robinson* has been superseded by *Teague*, we believe that the *Robinson* Court's observation about the nature of the double jeopardy guarantee retains its force and is relevant to the issue before us. Because the double jeopardy clause prevents an unconstitutional trial from taking place, it deprives the court of jurisdiction. Historically, federal habeas review has existed to permit convicted prisoners to challenge the jurisdiction of the trial court. *See* 3 W. LaFave & J. Israel, Criminal Procedure § 27.3(a) (1984).

We therefore hold that although *Grady* announced a new rule, that rule is nonetheless available to petitioners challenging their convictions on collateral review.

### III.

■ We now address the merits of McIntyre's double jeopardy claim. McIntyre argues that he is entitled to relief under *Grady* because his conviction for stealing relied on proof of conduct for which he had already been prosecuted. The State counters that McIntyre's double jeopardy rights were not violated because the tampering prosecution concerned conduct that occurred on the day that he was caught operating the car, while his stealing trial concerned conduct that occurred on the day he stole the car.

There is no dispute that *Grady* provides the relevant standard. The Supreme Court intended *Grady* "to guide double jeopardy analysis in all cases involving successive prosecutions." *United States v. Calderone*, 917 F.2d 717, 721 (2d Cir.1990), *petition for cert. filed*, No. 90–1527 (Apr. 3,

1991). *See also United States v. Easley,* 927 F.2d 1442, 1451 (8th Cir.1991).

Once a subsequent prosecution survives the *Blockburger* test, the court must next analyze if "the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady,* 110 S.Ct. at 2093. In *Grady,* the Court held that this rule barred the subsequent prosecution of a motorist for criminally negligent homicide and assault after he had earlier pled guilty to driving while intoxicated and failing to keep to the right of the median in connection with the same collision. *Id.* at 2094. The Court stated:

> By its own pleadings, the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep to the right of the median—to establish essential elements of the homicide and assault offenses. Therefore, the Double Jeopardy Clause bars this successive prosecution....

*Id.*

The Court added, however, that its holding would not bar a subsequent prosecution on the homicide and assault charges if the State relied solely on conduct, such as driving too fast in a heavy rain, for which Corbin had not already been convicted. *Id.* The Court clarified its holding by stating that the presentation of specific evidence in one trial would not "forever prevent the government from introducing that same evidence in a subsequent proceeding." *Id.* at 2093. It explained: "The critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Id.*

Under *Grady,* we must answer two questions: 1) Is the conduct the indictment requires to be proven conduct that constitutes an offense for which the defendant has previously been prosecuted? and 2) Is it being proven to establish an essential element of the offense for which the defendant is now being prosecuted? *See United States v. Felix,* 926 F.2d 1522, 1532 (10th Cir.1991) (Anderson, J., dissenting), *petition for cert. filed,* No. 90–1599 (Apr. 15, 1991).

In McIntyre's first trial, for tampering, the government presented the testimony of the two police officers who arrested McIntyre. They testified how they spotted the stolen Galant, pursued the vehicle and stopped it, and apprehended the driver, who turned out to be McIntyre. One of the officers testified that Mitsubishi keys were found in the ignition.

Jake Naughton, manager of the Mitsubishi dealership, testified that he had observed McIntyre speaking to salesman George on the day the car was stolen, that he saw George and McIntyre leave together to go on a test drive, and that the keys returned to the key board did not belong to the demonstrator Galant. Naughton also testified that McIntyre's use of the car on the day of the arrest was without permission. In his testimony, George identified McIntyre as the man he had observed looking at the showroom Galant and whom he later accompanied on a test drive of the demonstrator car. George also testified that McIntyre, after the drive, returned a set of Mitsubishi keys that were later discovered to be the keys to the showroom Galant. George also testified that he had examined the keys found in the car when McIntyre was apprehended, and that one of those keys belonged to the stolen car.

At the second trial, for stealing, the government presented essentially the same evidence. Again, Naughton and George testified as to the events that transpired at the dealership on November 22, 1985. One of the two arresting officers testified again, describing how he and his partner had observed the stolen car, pursued and stopped it, and apprehended McIntyre. The officer also testified that he saw keys in the ignition. The government also presented the testimony of a detective who had not testified at the first trial and who described the photographic lineup in which George had identified McIntyre.

Applying the *Grady* test to the facts before us, we focus on the conduct the government proved, not the evidence it

used to prove that conduct. *See Grady,* 110 S.Ct. at 2093.

In the first trial, the government proved first degree tampering by establishing that McIntyre was apprehended while operating the car, that McIntyre lacked the dealership's consent to operate the car, and that he operated the car knowing that he lacked that consent.[4] While the testimony about the events at the car dealership did not directly concern McIntyre's operation of the car, it was relevant to the owner's lack of consent and McIntyre's knowledge that he lacked consent.

At the stealing trial, the government proved the same conduct that it had proved to establish the entirety of the tampering offense. Thus, the answer to the first inquiry under *Grady*—whether the conduct being proven is conduct that constitutes a previously prosecuted offense—must be "yes".

The second step in our analysis focuses on whether the conduct was proved to "establish an essential element" in the second prosecution. The elements of stealing, as stated in the charge to the jury, are:

> If you find and believe from the evidence beyond a reasonable doubt:
> First ... the defendant took a 1986 Mitsubishi automobile, property owned by Kirkwood Mitsubishi, and
> Second, the defendant did so without the consent of Kirkwood Mitsubishi, and
> Third, that defendant did so for the purpose of withholding it from the owner permanently, and
> Fourth, that the property taken was an automobile,
> then you will find the defendant guilty of felony stealing.

The conduct constituting the tampering offense was proved in the second trial to establish essential elements of the stealing

charge. The testimony regarding the visit to the car dealership, together with the testimony concerning McIntyre's operation of the car, proved the entirety of the tampering offense, and nearly the entirety of the stealing offense. The only new witness presented by the government at the stealing trial was Detective Schneedle, who testified regarding the photographic lineup and George's identification of McIntyre. Even accepting that this testimony was necessary to help establish the first element of the stealing charge, the conduct proved at the first trial established the whole of the next two elements—the owner's lack of consent and McIntyre's purpose of withholding the car permanently from the owner.

Therefore, we conclude that McIntyre's second prosecution violated the rule of *Grady* because the government, to establish essential elements of the stealing charge, proved conduct that constituted an offense for which McIntyre had already been prosecuted. *See Grady,* 110 S.Ct. at 2093.

The State tries to distinguish from *Grady* by arguing that McIntyre was convicted of tampering based on the events that occurred on November 24, 1985, and that he was convicted of stealing based on events that occurred on November 22, 1985.

We are not persuaded by this argument. At both trials, the government proved McIntyre's conduct on both dates to establish the various elements of both tampering and stealing. We also note the Court's admonition in *Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977): "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *See also United States v. Pungitore,* 910 F.2d 1084,

---

4. The Court charged the jury in the tampering case as follows:
> If you find and believe from the evidence beyond a reasonable doubt:
> First, that on November 24, 1985, ... the defendant knowingly operated a certain automobile, a 1986 Mitsubishi Galant, owned by Kirkwood Mitsubishi; and

> Second, that he operated the automobile without the consent of the owner, and
> Third, that he operated knowing that he did so without the consent of the owner, then you will find the defendant guilty of tampering in the first degree....

1110–11 (3d Cir.1990) (discussing the auto stealing and joyriding prosecutions at issue in *Brown* as constituting a single course of conduct and distinguishing that case from those involving a continuous criminal enterprise), *cert. denied,* —— U.S. ——, 111 S.Ct. 2010, 114 L.Ed.2d 98 (1991).

We therefore hold that the government's prosecution of McIntyre for stealing violated the Fifth Amendment's guarantee against double jeopardy. For the foregoing reasons, we reverse the judgment of the district court, and remand with instructions to grant the writ of habeas corpus.