**William J. JOHNSON, Petitioner–Appellant,**

v.

**Dale HOWARD, Respondent–Appellee.**

**No. 90–7072.**

United States Court of Appeals, Eleventh Circuit.

June 19, 1992.

---

**4.** In light of our holding, we need not address the arguments of the parties relating to the statute of limitations.

Barre C. Dumas, Mobile, Ala., for petitioner-appellant.

Andy S. Poole, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.

Before KRAVITCH and EDMONDSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

William J. Johnson appeals from the district court's denial of his petition for writ of habeas corpus. Asserting *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), Johnson argues that his conviction violated the double jeopardy clause because he was convicted of the offense of possession of a pistol after conviction of a crime of violence *after* he was convicted of the offense of carrying a pistol without a permit. Considering the nature of the two offenses, we disagree and affirm the judgment of the district court.

Johnson was arrested when police discovered him in possession of a pistol in a vehicle that had been stopped. Johnson pled guilty to possession of a pistol in a vehicle without a permit and was fined $100 and court costs. After he paid the fine, Johnson was indicted for possession of a pistol after conviction of a crime of violence. Johnson was tried, convicted, and sentenced to five years in prison. The indictment and conviction arose out of the same arrest as did the guilty plea to possession of a pistol without a permit. The conviction for possession of a pistol after the conviction of a crime of violence was affirmed on appeal.

Johnson then filed a petition for writ of habeas corpus in district court. The state responded to Johnson's habeas petition by arguing that there was no double jeopardy violation because, although his two convictions were based on a single event, the elements of the two offenses were different. Relying on the double jeopardy standard of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),

the magistrate recommended denying the petition because each of Johnson's offenses required proof of a fact not required by the other. Over Johnson's objections, the district court adopted the magistrate's report and recommendation and denied the petition.

## I.

■ Although Johnson says that he is entitled to relief under the recent double jeopardy standard announced in *Grady*, the state insists that *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), bars *Grady*'s retroactive application. In *Teague*, the Supreme Court held that habeas petitioners may not attack their conviction by relying on a new rule established after their conviction became final. A new rule is defined as one that "breaks new ground or imposes a new obligation on the States or the Federal Government." *Id.* at 301, 109 S.Ct. at 1070. A case announces a new rule if the result was not dictated by precedent existing at the time a defendant was convicted. *Id.*

Under *Blockburger*, no violation of the double jeopardy clause exists if the two offenses each require proof of an additional fact that the other does not. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. In *Grady*, however, the Supreme Court wrote that to survive a double jeopardy challenge, a later prosecution must do more than merely meet the *Blockburger* test: "[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of the offenses charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. at 521, 110 S.Ct. at 2093.

■ The rule of law announced in *Grady* is a new rule because it expands the review of whether a conviction violates the double jeopardy clause beyond the previous test of *Blockburger* and establishes a new standard which was not "dictated by precedent." The *Grady* Court expressly stated that it was "adopt[ing] the suggestion set forth in *Vitale.*" *Grady*, 495 U.S. at 510, 110 S.Ct. at 2087; *see Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) (suggesting expanded approach to double jeopardy analysis). In *Vitale*, the defendant was first convicted of failing to reduce speed to avoid a fatal car accident; later, the state charged him with two counts of involuntary manslaughter. The *Vitale* Court held that the second prosecution was not barred under the *Blockburger* test because each offense required proof of a fact which the other did not. The *Vitale* Court went on to suggest, however, that if the state relied and proved the failure to reduce speed as the reckless act necessary to prove manslaughter, Vitale would have a "substantial" claim of double jeopardy. A mere suggestion—at best, a kind of dicta— cannot dictate the result in a later case. Therefore, the Court's suggestion in *Vitale* was not the law until the point was decided in *Grady*. So, *Grady* set out a "new rule." [1] *See McIntyre v. Trickey*, 938 F.2d 899 (8th Cir.1991) (concluding that *Grady* constituted "new rule" under *Teague*).

■ In general, a new rule is applied to cases still pending on direct review. A new rule, however, does *not* ordinarily apply to cases pending on collateral review; but there are two exceptions:

(1) The new rule places "certain kinds of primary, private individual conduct beyond the power of criminal law-making authority to proscribe;"

---

**1.** That *Grady* announced a new rule of law is also evident from Justice Scalia's dissent, in which Justices Rehnquist and Kennedy joined:

If the Double Jeopardy Clause guaranteed the right not to be twice put in jeopardy for the same conduct, it would bar this second prosecution. But that clause guarantees only the right not to be twice put in jeopardy for the same *offense*, and has been interpreted since its inception, as was its common-law ante-

cedent, to permit a prosecution upon the same acts but for a different crime. The Court today holds otherwise, *departing from clear text and clear precedent....*

*Grady*, 495 U.S. at 526, 110 S.Ct. at 2096 (emphasis added). Justice Scalia also referred to the ruling as a "novel principle" and "the Court's new theory of the Double Jeopardy Clause." *Id.* at 541, 110 S.Ct. at 2103, 2105.

(2) The new rule "requires the observance of those procedures that ... are 'implicit in the concept of ordered liberty.' "

*Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted). The second exception is limited to those "new procedures without which the likelihood of an accurate conviction is seriously diminished." *Butler v. McKellar*, 494 U.S. 407, 416, 110 S.Ct. 1212, 1218, 108 L.Ed.2d 347 (1990); *see also Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). Because a violation of *Grady* has no application to fact-finding procedures that would alter the accuracy of a criminal conviction, the second exception is inapplicable. *See McIntyre*, 938 F.2d at 899.

The first exception, which was narrowly defined in *Teague*, was expanded by the Supreme Court in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). *Penry* addressed the constitutionality of imposing the death penalty on mentally retarded defendants. Although *Teague* described the first exception as "focusing solely on new rules according constitutional protection to an actor's primary conduct," *Penry* suggested that the first exception also encompasses "substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed." *Penry*, 492 U.S. at 329, 109 S.Ct. at 2949. The *Penry* Court decided that a new rule prohibiting the execution of mentally retarded defendants would fit within the first *Teague* exception. The Court explained:

> [A] new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all. In both cases, the Constitution itself deprives the State of the power to impose a certain penalty, and the finality and comity concerns underlying Justice Harlan's view of retroactivity [expressed in *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)] have little force.

*Penry*, 492 U.S. at 330, 109 S.Ct. at 2934. Thus, the first *Teague* exception "cover[s]

not only rules forbidding criminal punishment of certain kinds of primary conduct, but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Id.*

■ The Fifth Amendment provides that "no person shall ... be subject for the same offence to be twice put in jeopardy of life or limb. ..." One purpose of the double jeopardy clause is to prevent an unconstitutional trial from taking place. *See Robinson v. Neil*, 409 U.S. 505, 509, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *see also McIntyre*, 938 F.2d at 899. Because it bars an unconstitutional prosecution, a rule concerning double jeopardy is similar to the rule discussed in *Penry* which would have barred the imposition of an unconstitutional punishment. *See Penry*, 492 U.S. at 329–30, 109 S.Ct. at 2952–53. In addition, because its very purpose is to prevent the occurrence of unconstitutional prosecutions, it follows that the prohibition on double jeopardy is a "categorical guarantee[ ] accorded by the Constitution." *See Butler*, 110 S.Ct. at 1218; *see North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (labeling the double jeopardy clause a "basic constitutional guarantee"). We therefore conclude that the *Grady* rule for double jeopardy falls under the first *Teague* exception and must be given retroactive effect.

## II.

The Supreme Court's adoption of *Grady*, coupled with our decision to make *Grady* retroactive, mandates a two-step approach to assessing double jeopardy claims. First, we must apply the *Blockburger* analysis. If the *Blockburger* test is satisfied, the second level of analysis outlined in *Grady* is undertaken.

### A. *Blockburger* Test

According to the Supreme Court's decision in *Blockburger*, two separate offenses arising out of one incident are the same offense "unless each requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at

182; *Beverly v. Jones,* 854 F.2d 412 (11th Cir.1988).

Johnson was first convicted of the offense of carrying a pistol without a license.[2] Johnson was then convicted of the offense of possession of a pistol after conviction of a crime of violence.[3] Johnson contends that because certain people are proscribed by law from being issued a license to carry a pistol—specifically, people who have been convicted of a crime of violence—he cannot be convicted of both these offenses because he is a person who is legally prohibited from obtaining a license to possess a pistol. In other words, Johnson argues that these offenses are one in the same for a person who possesses a pistol after being convicted of a crime of violence. According to Johnson, because these "two" offenses are "one," they do not have separate and distinct elements; and therefore, under *Blockburger,* his second conviction should have been barred.

These two offenses, however, are separate offenses as each requires proof of an element not contained in the other. The first offense requires a person to carry a pistol, in a vehicle or concealed about his person, without a license, in a place other than his home or business. *See Looney v. State,* 41 Ala.App. 582, 141 So.2d 535 (1962) (§ 13A–11–73 does not require a permit when person afoot carries an unconcealed pistol). Although Johnson could not properly get a license to carry the pistol, he would not have been in violation of the pertinent state statute if he had not been in a vehicle when he was found carrying his pistol. Johnson would not have been guilty of the offense if he had been carrying his pistol on his "land, in his abode or fixed place of business." Ala.Code § 13A–11–73. Thus, the first offense requires that a person carry the gun in a specific place and without a license but makes no mention of

the possessor's status as a felon. In contrast, the second statute prohibits a person from possessing a pistol if he has been earlier convicted of a crime of violence, regardless of where he is found in possession of that pistol. Under *Blockburger,* the two offenses are distinct—because they each require proof of a separate element—and thus Johnson could be convicted of them both without a violation of the double jeopardy clause.

**B. *Grady* Test**

Having concluded that the *Blockburger* test is satisfied in this case, the next step involves the *Grady* test. Although we hold today that *Grady* is retroactive, we must closely analyze *Grady* to determine whether it applies in this case to bar Johnson's second prosecution.

In *Grady,* the defendant's automobile struck oncoming vehicles, causing the death of one person and injury to another. He was ticketed for, and pled guilty to, driving while intoxicated and failing to keep to the right of the median. He was later indicted for reckless manslaughter, criminally negligent homicide, and third-degree reckless assault for the same incident. The Supreme Court established the *Grady* test by determining that the latter prosecution was barred by the double jeopardy clause, noting that "the State has admitted that it will prove the *entirety of the conduct* for which [the defendant] was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses." *Grady,* 495 U.S. at 523, 110 S.Ct. at 2094 (emphasis added). The Court also noted that its holding "would not bar a subsequent prosecution of the homicide and assault charges if the bill of particulars revealed that the State would not rely on proving the conduct for which [the defendant] had already been

---

**2.** In Alabama, the offense of carrying a pistol without a license is defined as follows:

No person shall carry a pistol in any vehicle or concealed on or about his person, except on his land, in his abode or fixed place of business, without a license therefor as hereinafter provided.

Ala.Code § 13A–11–73 (1975).

**3.** The *Code of Alabama* stipulates that:

No person who had been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his possession or under his control.

Ala.Code. § 13A–11–72 (1975).

convicted (i.e., if the State relied solely on [the defendant's] driving too fast in heavy rain to establish recklessness or negligence)." *Grady*, 495 U.S. at 523, 110 S.Ct. at 2094.[4]

The key to the double jeopardy violation in *Grady* was that the Court determined that the successive prosecution for homicide would require the government to prove the "entirety of the conduct" of driving while intoxicated and failing to keep to the right of the median for which the defendant was already convicted. In *Grady*, the state explicitly represented to the court that it intended to rely, as the basis for its vehicular homicide and assault prosecution, on the entirety of the traffic infractions to which the defendant had already pled guilty. Thus, proof of the entire conduct which constitutes an offense for which the defendant had already been prosecuted was necessary to the state's case.

In the present case, however, the state did not need to prove conduct comprising all the ingredients of the offense for which defendant was first prosecuted: for example, neither the lack of a license nor the location of the defendant at the time of possession needed to be proved. The only conduct which the state needed to prove for defendant's second offense was that defendant, having had an earlier conviction of a crime of violence, possessed a firearm. *See United States v. Stewart*, 780 F.Supp. 1366 (N.D.Fla.1991) (holding that under *Grady*, defendants could be convicted of possession of a firearm in a closed area and then later convicted of possession of a firearm by a convicted felon without violation of double jeopardy clause).

 To prove the offense of possession of a pistol after conviction of a crime of violence, the state did not need to prove the entirety of the conduct for which the defendant was first convicted (that is, carrying a pistol in a vehicle or concealed about his person while not "on his land, in his abode or fixed place of business" without a permit). So, Johnson's second conviction necessarily involved only some of the conduct, but not all the ingredients or the "entirety of the conduct" that made up a crime for which Johnson had already been convicted.[5] *See Grady*, 495 U.S. at 523, 110 S.Ct. at 2092, 2094. Therefore, under *Grady*, the two prosecutions are allowable under the double jeopardy clause.

AFFIRMED.

---

**4.** Although we have not had an opportunity to comment on *Grady* in a factually similar situation, we did recently comment on the focus in *Grady* on "conduct": "*Grady* purports to apply a 'same conduct' test for double jeopardy purposes. In this regard, the *Grady* Court was careful not to use a 'same evidence' or a 'same transaction' test, and specifically distanced itself from these formulations." *United States v. Gonzalez*, 921 F.2d 1530, 1538 (11th Cir.1991). That the two offenses are part of the same "transaction" or can be proven by the same "evidence" is insufficient to bar successive prosecutions under the language in *Grady*. *Id.* at 1538; *see also*

*Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (holding that presentation of specific evidence in one trial does not forever bar government from introducing same evidence in later proceeding).

**5.** In Johnson's trial for possession of a firearm by a convicted felon, the state did not prove that Johnson was without a license to carry the pistol; licenses were never mentioned. Therefore, the state did not, in fact, prove every element of the first offense at Johnson's trial for the second offense.