UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 93-1373

 UNITED STATES OF AMERICA,

 Appellant,

 v.

 LUIS A. COLON-OSORIO,

 Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Hector M. Laffitte, U.S. District Judge]
 

 

 Before

 Selya, Circuit Judge,
 
 Aldrich and Coffin, Senior Circuit Judges.
 

 

 Kathleen A. Felton, Attorney, Department of Justice, with whom
 
Daniel F. Lopez-Romo, United States Attorney, and Miguel A. Pereira,
 
Assistant United States Attorney, were on brief for appellant.
 Linda Backiel for appellee.
 

 

 November 30, 1993
 

 COFFIN, Senior Circuit Judge. On December 9, 1992, Luis
 

Colon Osorio was convicted of two counts of failure to appear as

ordered before a court in Connecticut. A month later, on the

same day that Colon Osorio received a sentence calculated to

effect his immediate release from prison, the government unsealed

a new criminal complaint charging him as a fugitive in possession

of firearms. The district court dismissed these charges on

double jeopardy grounds because the government's proof of

fugitive status would necessarily rely on the same conduct for

which Colon Osorio had been punished in the first prosecution. 

The case on which the district court primarily relied, Grady v.
 

Corbin, 110 S. Ct. 2084 (1990), has since been overruled. See
 

United States v. Dixon, 113 S. Ct. 2849 (1993). Under the
 

Supreme Court's current formulation of double jeopardy

jurisprudence, we are obliged to reverse.

 I. Facts
 

 Luis Colon Osorio is a member of Los Macheteros, an

organization dedicated to the independence of Puerto Rico. In

1985, along with seventeen other members of Los Macheteros, and

two non-members, Colon Osorio was arrested in Puerto Rico and

charged with aiding and abetting and conspiring in the planning

and execution of a 1983 robbery of $7 million from a Wells Fargo

depository in West Hartford, Connecticut.1

 

 1For further factual background on the Wells Fargo robbery
case, as well as a detailed analysis of the legal issues the case
involved, see United States v. Maldonado-Rivera, 922 F.2d 934 (2d
 
Cir. 1990).

 -2-

 Colon Osorio was detained without bail for seventeen months,

and then ordered released to the District of Puerto Rico in

December 1986. On September 24, 1990, Colon Osorio issued a

communique stating that he was "going underground to rejoin the

clandestine struggle" for the independence of Puerto Rico. A

criminal complaint alleging violation of conditions of pre-trial

release was filed the following day, and an arrest warrant

issued. 

 A Connecticut district court ordered Colon Osorio to appear

for a hearing on the government's motion to forfeit his bond on

December 17, 1990. He failed to appear. The same court ordered

him to appear for jury selection in the criminal trial on January

13, 1992. He failed to appear a second time. On March 17, 1992,

Colon Osorio was arrested in Puerto Rico, allegedly in possession

of a semi-automatic pistol, ammunition, and a live hand grenade,

as well as cocaine and marijuana. He was transferred to

Connecticut and charged with two counts of failure to appear

following release on bail, pursuant to 18 U.S.C. 3146(a).2 A

jury convicted him of these charges on December 9, 1992 and, on

January 29, 1993, he was sentenced to 318 days imprisonment. 

 In the interim, between conviction and sentencing, two

events occurred. First, on January 19, 1993, the government

dismissed the indictments against Colon Osorio stemming from the

 

 2This statute provides: "Whoever, having been released under
this chapter knowingly . . . fails to appear before a court as
required by conditions of release . . . shall be punished as
provided in subsection (b) of this section."

 -3-

Wells Fargo bank robbery case. Second, on the day before his

sentencing, the United States brought a criminal complaint in

Puerto Rico, unsealed the next day, charging him with possession

of the firearms and drugs allegedly confiscated at the time of

his arrest in Puerto Rico. The subsequent indictment charged

Colon Osorio with three counts of possession of a firearm as a

fugitive from justice, in violation of 18 U.S.C. 922(g)(2),3

and two counts of possession of a controlled substance, in

violation of 21 U.S.C. 844(a).

 The district court dismissed the fugitive-in-possession

charges on double jeopardy grounds. The court first determined

that 18 U.S.C. 3146(a)(1), the failure to appear provision, was

a "species of lesser-included offense" of 18 U.S.C. 922(g)(2),

making the second prosecution an impermissible repetition of the

first one. Alternatively, the court found that the second

prosecution was barred by Grady v. Corbin, 110 S. Ct. 2084
 

(1990), in which the Supreme Court held that to establish an

essential element of an offense charged in a second prosecution,

the government could not rely on conduct for which the defendant

already had been prosecuted. The district court concluded that

the government would have to rely on the conduct proving Colon

 

 3This statute provides: "It shall be unlawful for any person
. . . who is a fugitive from justice . . . to ship or transport
in interstate or foreign commerce, or possess in or affecting
commerce, any firearm or ammunition; or to receive any firearm or
ammunition which has been shipped or transported in interstate or
foreign commerce."

 -4-

Osorios's failure to appear in order to establish the flight

element of the section 922(g)(2) offense.4

 On appeal, the government contends that the Supreme Court's

recent opinion in United States v. Dixon, 113 S. Ct. 2849 (1993),
 

controls the resolution of this case. It points out that the

Dixon Court flatly overruled Grady v. Corbin, thus undermining
 

one of the district court's bases for finding a double jeopardy

bar to the second prosecution. Additionally, the government

argues that applying the traditional double jeopardy analysis set

forth in Blockburger v. United States, 284 U.S. 299 (1932), and
 

reaffirmed in Dixon, compels the conclusion that there are two
 

separate offenses, permitting the fugitive-in-possession

prosecution to proceed.

 Colon Osorio recognizes that Grady v. Corbin no longer
 

supports his claim of double jeopardy, but his reading of Dixon
 

otherwise differs from the government's. He claims that Dixon
 

bolsters the district court's conclusion that his bail jumping

offense is completely included in the fugitive-in-possession

 

 4The district court also noted a potential venue problem if
a single trial had been sought for both violations. Opinion at
9, n.10. The government notes that an exception to the double
jeopardy bar on subsequent prosecutions may lie where the State
is unable to proceed on the more serious charge at the outset
because the additional facts necessary to sustain the charge have
not yet been discovered or occurred, despite the exercise of due
diligence, see Brown v. Ohio, 432 U.S. 161, 169, n.7 (1977), and
 
urges us to extend this exception to embrace legal impediments as
well, such as where venue restrictions prevent the government
from joining all charges in a single district. However, the
government cites no authority which supports this proposition.
Because we find no double jeopardy bar to the second prosecution
under section 922(g)(2), we need not reach this issue. 

 -5-

charge, and that his prosecution for that charge is therefore

barred on double jeopardy grounds.

 Whether principles of double jeopardy bar a subsequent

prosecution is an issue for plenary review. United States v.
 

Aguilar-Avanceta, 957 F.2d 18, 21 (1st Cir. 1992). 
 

 II. Double Jeopardy Law
 

 The Double Jeopardy Clause of the Fifth Amendment provides

that no person shall "be subject for the same offence to be twice

put in jeopardy of life or limb . . . ." U.S. Const. amend V.

Under this clause, a defendant is protected from both successive

prosecutions and multiple punishments for the same criminal

offense. See North Carolina v. Pearce, 395 U.S. 711 (1969);
 

United States v. Rivera Martinez, 931 F.2d 148, 152 (1st Cir.
 

1991).

 In Blockburger v. United States, 284 U.S. 299 (1932), the
 

Supreme Court ruled that punishment for two statutory offenses

arising out of the same criminal act or transaction does not

violate double jeopardy if "each provision requires proof of a

fact which the other does not." Blockburger, 284 U.S. at 304.
 

The Blockburger test focuses on the statutory elements of each
 

offense. "If each requires proof of a fact that the other does

not, the Blockburger test is satisfied, notwithstanding a
 

substantial overlap in the proof offered to establish the

crimes." Ianelli v. United States, 420 U.S. 770, 785 n.17
 

(1975); see also United States v. Felix, 112 S. Ct. 1377, 1382
 

(1992).

 -6-

 In Brown v. Ohio, 432 U.S. 161, 166-67 (1977), the Supreme
 

Court acknowledged that the Blockburger test was not the only
 

standard used to determine whether successive prosecutions were

the "same offence" for double jeopardy purposes. The Brown Court
 

noted that in some circumstances where a second prosecution would

require relitigation of factual issues already resolved by the

first, successive prosecutions were barred, notwithstanding the

fact that the two offenses involved were sufficiently different

to permit the imposition of consecutive sentences under

Blockburger. The Court pointed to Ashe v. Swenson, 397 U.S. 436
 

(1976), and In re Nielsen, 131 U.S. 176 (1889), to support this
 

proposition. In Ashe, the Court ruled that principles of
 

collateral estoppel embodied in the Double Jeopardy Clause barred

a second prosecution for robbery of one person when the defendant

had been acquitted of robbery of another person in the same

incident. In In re Nielsen, the Court held that a conviction for
 

cohabiting with two wives over a two and one-half year period

barred a subsequent prosecution for adultery with one of the

wives on the day following the end of that period. Although

strict application of Blockburger would have permitted imposition
 

of consecutive sentences, in both cases, the Court found that

these separate offenses were the "same" for double jeopardy

purposes, and barred the second prosecutions. Brown, 432 U.S. at
 

166-67 n.6.

 In 1990, in Grady v. Corbin, 110 S. Ct. at 2084, the Court,
 

reviewing over a century of double jeopardy jurisprudence, looked

 -7-

to Ashe and In re Nielsen as evidence that double jeopardy
 

analysis must extend beyond Blockburger. The Grady Court
 

recognized a distinction between multiple punishment and

successive prosecution cases, noting that successive prosecutions

raised concerns beyond punishment which justified a more robust

standard by which to review double jeopardy for these cases. 

 The Grady majority asserted that, in cases of multiple
 

punishment, the purpose of the Double Jeopardy Clause was to

prevent the sentencing court from prescribing a greater

punishment than that authorized by the legislature. 110 S. Ct at

2091. In that context, Blockburger functioned as a "`rule of
 

statutory construction,' a guide to determining whether the

legislature intended multiple punishments." Id. at 2091 (quoting
 

Missouri v. Hunter, 459 U.S. 359, 366 (1983)). By contrast,
 

successive prosecutions raised concerns beyond excessive

punishment, such as questions of finality, harassment, and the

risk of erroneous conviction. In this context, the Double

Jeopardy Clause also served as a check on the state's

prosecutorial power, insuring that the state, "with all its

resources and power," did not misuse its authority over

individual defendants. Id. (quoting Green v. United States, 355
 

U.S. 184, 187 (1957)). 

 Under Grady, to determine whether the Double Jeopardy Clause
 

barred a subsequent prosecution, a court first applied the

traditional Blockburger test. If the subsequent prosecution
 

survived the Blockburger test, the court then determined whether
 

 -8-

establishing an essential element of an offense charged in that

prosecution would require the government to prove conduct that

constitutes an offense for which the defendant already has been

prosecuted. 110 S. Ct. at 2093. If so, the second prosecution

was barred. Id. 
 

 In Dixon v. United States, 113 S. Ct. 2849 (1993), the Court
 

renounced Grady's "same conduct" test and affirmed that the
 

Blockburger analysis governs both multiple punishment and
 

successive prosecution cases.5 Writing for a 5-4 majority,

Justice Scalia, in Dixon, essentially adopted the reasoning of
 

his dissent in Grady to argue that Grady's "same conduct" rule
 

lacked constitutional roots, and was wholly inconsistent with

Supreme Court precedent and the common-law understanding of

double jeopardy. 113 S. Ct. at 2860. In his view, the Grady
 

Court had overstated the limitations of the Double Jeopardy

Clause, in practice embracing a requirement that would have all

charges arising from a single criminal transaction tried in a

single proceeding. Grady, 110 S. Ct. at 2102. The Court in
 

Dixon thus narrowed the scope of inquiry in successive
 

prosecution cases. 

 III. Application of Dixon
 

 Applying the Dixon/Blockburger "same elements" test to the
 

facts of this case compels the conclusion that the defendant may

be prosecuted for being a fugitive in possession of firearms

 

 5In the three years since Grady, the composition of the
 
Court changed, resulting in a shift in the majority view of the
history and precedent underlying the Double Jeopardy Clause.

 -9-

under 18 U.S.C. 922(g)(2) despite his earlier conviction under

18 U.S.C. 3146 for failure to appear. To secure a conviction

under section 3146(a)(1), the government must prove that (1) the

defendant has been released on bail pending trial, sentencing, or

appeal; (2) the defendant was required to appear before a court;

and (3) the defendant knowingly failed to appear. The fugitive-

in-possession charge requires proof (1) that a defendant fled to

avoid prosecution for a crime; (2) that he knowingly possessed a

firearm; and (3) that the firearm was possessed in or affecting

commerce.

 Each statute clearly requires proof of elements that the

other does not. Under section 3146, for example, the government

must prove that defendant was released on bail, and was required

to appear before a court. These elements are not required under

section 922(g), as a person may be a fugitive from justice

without having been released on bail, and without being required

to appear before a court. Section 922(g) requires that the

defendant possess a firearm, which is not a required element for

a violation of section 3146(a). Therefore, prosecution for these

two offenses is not barred by Blockburger/Dixon.
 

 The district court made this same observation, but rejected

the technical comparison of the statutes' elements as too

cursory. The court found that this case was comparable to Harris
 

v. Oklahoma, 433 U.S. 682 (1977) (per curiam), where the Supreme
 

Court held that a prosecution for robbery with a firearm,

following defendant's conviction for felony murder based on the

 -10-

robbery, was barred by double jeopardy principles. The Supreme

Court later explained this result by noting that, for double

jeopardy purposes, it did not consider "the crime generally

described as felony murder as a separate offense distinct from

its various elements." Illinois v. Vitale, 447 U.S. 410, 420
 

(1980). Rather, robbery with a firearm was a "species of lesser-

included offense" of the felony murder for which Harris already

had been prosecuted. Id. 
 

 Relying on Harris, the district court found that, on the
 

specific facts of this case, section 3146(a)(1) was a "species of

lesser-included offense" of section 922(g)(2). The court

explained that in order to prosecute Colon Osorio for a violation

of section 922(g)(2), the government must show that Colon Osorio

was a fugitive from justice, which, in turn, required a showing

that he fled to avoid prosecution. In this case, the government

would rely on proof of the same conduct which comprised proof of

his bail jumping offense under section 3146: that he was on bail

for an indictment in Connecticut; that he was required to appear

before a court; and that he failed to appear. Noting that these

were all the "elements necessary in the previous prosecution for

violations of section 3146(a)(1)," the district court held that

section 3146 was a "species of lesser-included offense" of

section 922(g)(2) and, therefore, that Blockburger barred the
 

government from prosecuting Colon Osorio under this section.

 The district court's analogy lacks force in the aftermath of

Dixon. In the first place, Harris' status is unclear. The
 

 -11-

Supreme Court in Grady had pointed to Harris to support its
 

argument that Blockburger was not the exclusive test to vindicate
 

the Double Jeopardy Clause's protection against multiple

prosecutions. Grady, 110 S. Ct. at 2092. The Dixon Court
 

overruled this proposition, holding that both multiple

prosecution and multiple punishment cases are to be assessed

under the identical standard, Blockburger's "same elements" test.
 

Dixon, 113 S. Ct. at 2856, 2860. A majority of the justices
 

criticized an interpretation of Harris which supports the
 

proposition that the Blockburger test is insufficient to
 

determine whether a successive prosecution is barred, and that

conduct, not merely statutory elements, must be the object of the

double jeopardy inquiry. Id. at 2861. These same justices
 

disagreed, however, over Harris' application, leaving open the
 

possibility that a majority could still view Harris as providing
 

an exception to the Blockburger approach. See 113 S.Ct. at 2866-
 

67 (Rehnquist, C.J., concurring and dissenting); id. at 2857 n.2
 

(Scalia, J.).6 

 

 6Dixon involved the question of whether defendants who had
 
been prosecuted for criminal contempt of court for violating
court orders subsequently could be tried for crimes arising out
of the same conduct which was the subject of the contempt
prosecution. While a majority of the Court joined to reaffirm
Blockburger's application to successive prosecution cases, and to
 
overrule Grady v. Corbin's "same conduct" test, there was
 
significant disagreement among this same majority regarding the
effect of this change. Chief Justice Rehnquist, in an opinion
joined by Justices O'Connor and Thomas, focused his criticism on
Justice Scalia's application of Harris. He contended that
 
Justice Scalia improperly invoked Harris. In looking to the
 
facts that had to be proven to show a violation of the specific
court orders at issue, and not to the generic elements of the
crime of contempt of court, Justice Scalia effectively

 -12-

 In any event, this case is distinguishable from Harris. In
 

Harris, the Court barred a second prosecution for the offense
 

that had been used to establish an element of the felony murder

offense for which the defendant was convicted. By contrast, bail

jumping is not an offense on which the government will rely to
 

establish Colon Osorio's fugitive status. The government merely

will rely on the same conduct that the government proved to
 

establish Colon Osorio's bail jumping offense. 

 Indeed, the district court's analysis is precisely what the

Dixon Court rejected. Under Dixon, the fact that the government
 

will attempt to prove that Colon Osorio was a fugitive by

referring to the same conduct used to prove the elements of

failure to appear does not offend the Double Jeopardy Clause.

The same actions can constitute an offense under two distinct

statutes and can be prosecuted separately under each statute as

long as the statutes do not define a single offense within the

meaning of Blockburger. United States v. White, 1 F.3d 13, 17
 

(D.C. Cir. 1993); see also Blockburger, 284 U.S. at 304 (quoting
 

Morey v. Commonwealth, 108 Mass. 433 (1871)).
 

The district court's decision therefore must be REVERSED.
 

 

resurrected the Grady analysis that the Court had just rejected.
 
Dixon, 113 S. Ct. at 2866-67 (Rehnquist, C.J., concurring and
 
dissenting). See also id. at 2857 n.2 (Scalia, J., criticizing
 
Chief Justice Rehnquist's interpretation of his analysis of
Harris). Therefore, whether Harris still provides an exception
 
to Blockburger remains unclear post-Dixon.
 

 -13-